UNITED STATES of America,
Plaintiff–Appellee.

v.

David L. HARPER,
Defendant–Appellant.

UNITED STATES of America,
Plaintiff–Appellee,

v.

Adrian A. HARPER,
Defendant–Appellant.

Nos. 89–10515, 89–10516.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 6, 1990.

Decided March 25, 1991.

Thomas M. Kummerow, Clay & Hall, Oakland, Cal., for defendant-appellant Adrian Harper.

Arthur Pirelli, San Francisco, Cal., for defendant-appellant David Harper.

John J. Jordan, Asst. U.S. Atty., San Francisco, Cal., for plaintiff-appellee.

Before ALARCON, BRUNETTI and KOZINSKI, Circuit Judges.

KOZINSKI, Circuit Judge:

There's a simple way for the police to avoid many complex search and seizure problems: Get a search warrant. Had they obtained a search warrant in this case—as they could well have—there would have been no motion to suppress, no hearing, no objection at trial and no thorny issues for us to resolve on appeal. But they didn't. So once again we consume a few pages of the Federal Reporter analyzing the circumstances under which the police may enter a home without a search warrant.

### Facts

The police thought David Harper was up to no good; they suspected he was manufacturing and distributing drugs. Nor was David's parole officer too happy with him; David had violated the conditions of his parole and the parole board had issued a warrant for his arrest. But David's parole officer didn't have a current address for him and couldn't locate him, so David remained at large.

Acting on a tip, the police began surveillance of a house at 10 Manzanita Street, Daly City, California. David was seen entering the house with his own key once or twice. The police also learned that two of David's brothers resided there, and that the house was rented by the Harper family. They informed David's parole officer who, on February 1, 1989, went to the house to search for him. Accompanied by numerous police officers, she entered the house without a search warrant. Some officers went upstairs, where they found David; others went downstairs and forced their way into what is described as a widow's or in-laws' apartment where Adrian Harper lived. It turns out that Adrian was not only a drug-dealer, but also a messy housekeeper. When the police entered his apartment, they saw drug paraphernalia scattered about, including cooking utensils encrusted

with crack cocaine. They also saw a locked safe.

David and Adrian were arrested and placed in a police car. Unbeknownst to them, the police activated a tape recorder in the car's trunk. While David and Adrian kept themselves busy discussing their circumstances and making incriminating statements, the police obtained a warrant to remove and open the safe. It contained crack cocaine. The crack cocaine, crack encrusted utensils and recorded conversation were admitted at trial over objection. Not surprisingly, the jury convicted and defendants appeal.

## Discussion

A. Defendants first contend that the warrant issued for David's arrest did not authorize entrance into a home. They concede that the warrant was issued on probable cause and that, under *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), an arrest warrant normally carries with it the limited authority to enter the home of the person named in the warrant. *Id.* at 603. But this warrant, they argue, is different: It was issued by a parole board, not a neutral, detached magistrate. They insist that because no magistrate reviewed it, the warrant didn't carry with it the authority to enter a home.

■ Defendants' argument is foreclosed by *Griffin v. Wisconsin*, 483 U.S. 868, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987). There, the Supreme Court held that Wisconsin may constitutionally permit its probation officers to search a probationer's home without a warrant and with less than probable cause. Since Wisconsin may permit the search of a probationer's home with no warrant at all, we see no reason why California can't allow its officials to look for a parolee by searching his home under the authority of a parole arrest warrant issued

on probable cause. There is no review by a magistrate in either case.[1]

■ B. Having decided that the arrest warrant authorized entry into David Harper's residence, we must now decide whether the police had authority to enter the home at 10 Manzanita. An arrest warrant does not carry with it the authority to enter the homes of third persons. *Steagald v. United States*, 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981). Thus, in *Perez v. Simmons*, 900 F.2d 213 (9th Cir. 1990), *amending* 884 F.2d 1136 (9th Cir. 1989), we held that the police may enter a home with an arrest warrant only if they have probable cause to believe the person named in the warrant resides there. *Id.; see also United States v. Dally*, 606 F.2d 861 (9th Cir.1979) (police entitled to search apartment because they had sufficient evidence to reasonably believe parole violator resided there). If the police lack probable cause to believe the suspect is an actual resident, but have probable cause to believe he's present, they must get a search warrant. *Perez*, 900 F.2d at 213.

■ Here, the police knew that the home at 10 Manzanita was leased to the Harper family and that Tommy and James Harper, two of David's brothers, lived there; an uncorroborated source had informed them that David lived there as well. Through intermittent surveillance, the police observed David entering the home with his own key once or twice during a three day period. The police also knew that David had lived with his family at another address immediately before he was incarcerated, suggesting that he had no independent residence and would resume living with them upon his release. In addition, the police saw cars belonging to known associates of David's parked at the Harper family home. This information was sufficient to give the police probable cause to believe that David resided there—but just

1. Nor do we see a constitutional difference between probation and parole for purposes of the fourth amendment. Both probationers and parolees enjoy "only ... conditional liberty properly dependent on observance of special ... restrictions." *Morrissey v. Brewer*, 408 U.S. 471, 480, 92 S.Ct. 2593, 2599, 33 L.Ed.2d 484 (1972), *quoted in Griffin*, 483 U.S. at 874, 107 S.Ct. at 3168. The operation of a parole system, like a probation system, "presents 'special needs' beyond normal law enforcement that may justify departures from the usual warrant and probable-cause requirements." *Griffin*, 483 U.S. at 873–74, 107 S.Ct. at 3168–69.

barely. It would have been far more prudent for the police to have obtained a search warrant.

■ C. Defendants also contend that the search was illegal because it was really undertaken as part of a police investigation and not for parole purposes. They correctly point out that the police may not use a parole officer as a "stalking horse" to evade the fourth amendment's warrant requirement. *United States v. Richardson*, 849 F.2d 439, 441 (9th Cir.), *cert. denied*, 488 U.S. 866, 109 S.Ct. 171, 102 L.Ed.2d 141 (1988); *see also Latta v. Fitzharris*, 521 F.2d 246, 249 (9th Cir.) (en banc) (plurality opinion), *cert. denied*, 423 U.S. 897, 96 S.Ct. 200, 46 L.Ed.2d 130 (1975). However, police and parole officers are entitled to work together to achieve their objectives; concerted action does not in and of itself make a search constitutionally infirm. *United States v. Jarrad*, 754 F.2d 1451, 1454 (9th Cir.), *cert. denied*, 474 U.S. 830, 106 S.Ct. 96, 88 L.Ed.2d 78 (1985). The proper question is whether the parole officer used her authority to help the police evade the fourth amendment's warrant requirement or whether the parole officer cooperated with the police to achieve her own legitimate objectives.

■ David's parole officer obtained a warrant for his arrest because David violated the terms of his parole, not because the police asked her to. In fact, the warrant was issued before the police even contacted David's parole officer; the only reason she hadn't executed it was she couldn't find David. Naturally, when the police came forward with information regarding David's whereabouts and offered to help arrest him, she agreed. The district court's implicit finding that the parole officer cooperated with the police in pursuit of legitimate parole objectives, and not as a stalking horse, was not clearly erroneous.

■ D. Defendants' challenge to the scope of the search also fails. Once the police "possess[ed] an arrest warrant and probable cause to believe [David] was in his home, the officers were entitled to search anywhere in the house in which [he] might be found." *Maryland v. Buie*, 494 U.S. 325, 110 S.Ct. 1093, 1097, 108 L.Ed.2d 276 (1990). But they weren't entitled to search the homes of others; for that, they needed a warrant or exigent circumstances. *See United States v. Whitten*, 706 F.2d 1000, 1008 (9th Cir.1983), *cert. denied*, 465 U.S. 1100, 104 S.Ct. 1593, 80 L.Ed.2d 125 (1984); *cf. People v. Alders*, 87 Cal.App.3d 313, 151 Cal.Rptr. 77 (1978) (probation search limited to areas and possessions over which the probationer might have exercised dominion or control). In searching for David, the police entered what is referred to as an in-laws' or widow's apartment; that's where they ran into Adrian and the incriminating evidence.

■ Defendants offer us no reason to upset the district court's implicit finding that the widow's apartment was part of the Harper home. The only entrance to it mentioned in the record was through the Harper house; there is no evidence that it was a separate structure, had a different address or possessed any other attribute which might make it a distinct home.[2]

## Conclusion

Because the search of the Harper home for David Harper was legal, the fruits of the search, including David and Adrian's recorded conversation, were properly admitted. We affirm the judgments of conviction.

**2.** Adrian Harper also contends that there was insufficient evidence to convict him. His contention is patently meritless. The police found cooking utensils coated with crack cocaine in plain view in his apartment; the safe in his apartment was full of crack; and Adrian and David's recorded conversation implicated Adrian as the person who had cooked it. The evidence was more than sufficient to convince a reasonable jury that Adrian was involved in the manufacture and distribution of crack cocaine.