Deanna Jo SHEA, Appellant,

v.

Karla L. SMITH, Scott Baker,
Robert Rumgay.

No. 91–3720.

United States Court of Appeals,
Third Circuit.

Argued May 8, 1992.

Decided June 11, 1992.

Joseph E. Buckley, Jr. (argued), Brookville, Pa., for appellant.

Richard D. Klaber (argued), Dickie, McCamey & Chilcote, Pittsburgh, Pa., for appellees Smith and Baker.

Gloria A. Tischuk (argued), Office of Atty. Gen. of Pennsylvania, Pittsburgh, Pa., for appellee Rumgay.

Before: BECKER, NYGAARD and ROTH, Circuit Judges.

## OPINION OF THE COURT

NYGAARD, Circuit Judge.

Deanna Jo Shea appeals from a summary judgment granted in favor of Karla Smith, Scott Baker, and Robert Rumgay, in a section 1983 claim. Shea alleged that the defendants violated her Fourth Amendment rights when they entered her house without a warrant and searched the premises. The district court granted summary judgment against Shea because the defendants enjoyed qualified immunity.

Our review of the summary judgment is plenary. *Hines v. Consolidated Rail Corp.*, 926 F.2d 262, 267 (3d Cir.1991). We will construe the facts in the light most favorable to the nonmovant Shea. We will affirm because there are no genuine issues of material fact and the defendants are entitled to summary judgment as a matter of law.

### I.

The facts are simple. Shea rents and resides in a house. At the time of the events leading to this case, Armond "Ace" Wazelle was her boyfriend, whom Shea allowed to reside with her and who did so by Shea's account "approximately one-half of the time." Wazelle was on probation for aggravated assault. His residence, as shown in the Probation Office, is Shea's house.

On July 4, 1989, Shea told her mother, Frances Fox, that she had a fight with Wazelle. Concerned, Fox visited Shea and found the house in disarray. Dishes had been smashed on the floor; things were "busted up" all over the house; and the stove had been pulled from the wall. Fox thought Wazelle was responsible because the things broken were sentimental to Shea. Fox thought that Shea was injured because Shea was walking gingerly as if her back was hurt, but there were no visible injuries.

The next day Fox called Karla Smith, a probation officer. Fox told Smith about the fight and also that she "thought he had been drinking." She also told Smith she thought Wazelle physically hurt her daughter. According to Fox, Smith said, "I'd like to get something on him." Smith did not ask Fox to substantiate her allegation that Wazelle had been drinking. Fox did not give evidence to Smith to show that Wazelle had beaten Shea. Smith stated that she didn't recall whether Fox told her the information was anything more than a hunch.

Smith thought that Wazelle violated the terms of his probation. She told her supervisor, who directed Smith to investigate for possible probation violations (which included both consumption of alcohol and assault). He told her to have a police officer accompany her because Wazelle had a tendency to become violent. Smith and Robert Rumgay, a police officer, together with Scott Baker, a summer intern at the probation office, went to Shea's house. They did not get a search warrant.

When they arrived at the premises, they found the sliding glass door of the premises wide open. Smith yelled, "Is anybody home?" They heard no response and entered. They found, as Fox had described, the premises in disarray, and immediately after they entered the house, Smith, Baker and Rumgay noticed a rifle laying on the couch. They went through the kitchen and

up the stairs to Shea's bedroom where they found Shea asleep on the bed. Shea stated she was asleep in the nude, although the defendants said she was covered when they entered her bedroom. There is also some question whether Baker searched her bedroom closet.

At this point, Shea was very displeased and requested that the defendants either show a search warrant or leave her house. The defendants told Shea that a warrant was not necessary. They refused to leave the house, but went downstairs and waited in the kitchen for Shea to dress. When Shea came down, they searched the refrigerator and kitchen drawers. They found no evidence of probation violations and left.

Shea sued Smith, Rumgay, and Baker in federal district court under 42 USC § 1983. She also alleged pendent state claims of trespass and intentional infliction of emotional distress. Rumgay moved for summary judgment, which the district court granted. Shea appealed from the order granting summary judgment, but we dismissed her appeal because the order was not final. Later, the district court granted summary judgment for Smith and Baker, who were protected by qualified immunity. This order was final and made the earlier interlocutory summary judgment appealable. Shea appealed once more.

## II.

■ Before we discuss the merits, we must confront a jurisdictional issue. Federal Rule of Appellate Procedure 3(c) provides: "The notice of appeal shall specify the party or parties taking the appeal; shall designate the judgment, order or part thereof appealed from...." Shea's notice of appeal said that she appeals from the "Judgment Order for Summary Judgment entered on September 16, 1991." This final order granted summary judgment in favor of Smith and Baker. The claim against Rumgay, of course, was decided earlier. Rumgay contends that we do not have appellate jurisdiction to review his summary judgment because the notice of appeal did not specify that Shea was appealing from the order granting him summary judgment

and therefore it did not meet the requirements of Rule 3(c). We disagree. The notice of appeal is effective for all parties.

■ We liberally construe the requirements of Rule 3. We have held that when an appellant gives notice that he is appealing from a final order, failing to refer specifically to earlier orders disposing of other claims or other parties does not preclude us from reviewing those orders. *Murray v. Commercial Union Ins. Co.*, 782 F.2d 432, 434 (3d Cir.1986). We reasoned, "in their appellate briefs all parties addressed every issue presented to the district court, and in fact plaintiffs could not appeal the early dismissals of the second and third counts until the final judgment was entered." Id. at 434. We have held that appellate jurisdiction vests over orders not specified in the notice of appeal if there is a connection between the specified and unspecified orders, the intention to appeal the unspecified order is apparent, the opposing party is not prejudiced and has a full opportunity to brief the issues. *Williams v. Guzzardi*, 875 F.2d 46, 49 (3d Cir.1989). See *Gooding v. Warner–Lambert Co*, 744 F.2d 354, 357 n. 4 (3d Cir.1984) (appellate jurisdiction vests over unspecified prior order dismissing one claim where notice of appeal specified order granting summary judgment on remaining claim as the earlier order could not be appealed until judgment was entered on the remaining claim, and parties briefed and argued all issues); *Elfman Motors, Inc. v. Chrysler Corp.*, 567 F.2d 1252, 1254 (3d Cir.1977) (per curiam) ("if from the notice of appeal itself and the subsequent proceedings on appeal it appears that the appeal was intended to have been taken from an unspecified judgment, order or part thereof, the notice may be construed as bringing up the unspecified order for review"). See also *CTC Imports and Exports v. Nigerian Petroleum*, 951 F.2d 573, 576 (3d Cir.1991) (where appellant appealed from a denial of a motion it never filed and where it was clear appellant intended and tried to appeal from an unspecified order, the notice of appeal will be

treated as "an effective, although inept, attempt to appeal from" the unspecified order if there is no prejudice to the parties).

Our law is consistent with the Supreme Court. See *Foman v. Davis*, 371 U.S. 178, 181, 83 S.Ct. 227, 229, 9 L.Ed.2d 222 (1962) (the court had jurisdiction over an earlier unspecified judgment, since intent to appeal from it was manifest and respondent was not misled or prejudiced). See also *Smith v. Barry*, — U.S. —, 112 S.Ct. 678, 682, 116 L.Ed.2d 678 (1992) (appellate brief may serve as a "functional equivalent" of a notice); *Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 316–17, 108 S.Ct. 2405, 2408–09, 101 L.Ed.2d 285 (1988) (courts should liberally construe the requirements of Rule 3 so that even if the notice does not meet the letter of Rule 3 there is appellate jurisdiction if appellant has filed a "functional equivalent").

The law is clear. Here Shea intended and tried to appeal the decisions as to all defendants. In the caption of the notice of appeal, all three defendants were identified. When the district court granted summary judgment to Rumgay, Shea immediately appealed. We dismissed the appeal as premature because the district court had not decided the case against Smith and Baker. But, Rumgay was on notice that upon a final judgment and order Shea intended to appeal his summary judgment. Rumgay had notice, briefed the issues, knew what was appealable, and was not misled. We have appellate jurisdiction as to all parties.

### III.

■ Government officials performing discretionary functions generally are shielded from liability for civil damages if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). On summary judgment, we may consider not only the currently applicable law, but also the law as it clearly existed at the time an action occurred. 102 S.Ct. at 2738. If the law at that time was not clearly established, an official could not

reasonably be expected to "know" that the law forbade conduct not previously identified as unlawful. Id. Conversely, if the law was clearly established, the immunity defense fails because a reasonable public official should have known the law governing his conduct. Id.

■ "Clearly established rights" are those with contours sufficiently clear that a reasonable official would understand that what he is doing violates that right. *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). A plaintiff need not show that the very action in question has previously been held unlawful, but she needs to show that in light of preexisting law the unlawfulness was apparent. 107 S.Ct. at 3039. Thus an official who conducts an illegal search may not be held personally liable if he could have reasonably believed that the search comported with the Fourth Amendment. Id. at 3042. See *Mitchell v. Forsyth*, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985).

■ Shea contends there are genuine issues, (1) whether Wazelle "resided" in Shea's home, and (2) whether the defendants' conduct was "reasonable." She also contends that *Griffin v. Wisconsin*, 483 U.S. 868, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987), does not apply here because that case involved the construction of a state statute.

In *Griffin*, upon information received from a police detective that there were or might be guns in the probationer's apartment, a probation officer and a police officer searched the apartment and found a gun. The probation officer had authority to search the premises without a warrant under Wisconsin law. The law placed probationers in the legal custody of the State Department of Health and Social Services and rendered them "subject to ... conditions set by the ... rules and regulations established by the department." One such regulation permits any probation officer to search a probationer's home without a warrant if his supervisor approves and if there are "reasonable grounds" to believe contra-

band is present. It provides that an officer should consider a variety of factors in determining whether "reasonable grounds" exist, such as information provided by an informant, the reliability and specificity of that information, the reliability of the informant (including whether the informant has any incentive to supply inaccurate information), the officer's own experience with the probationer, and the "need to verify compliance with rules of supervision and state and federal law." Wis Admin Code §§ 328.21(4), 328.16(1) (1981).

The Supreme Court upheld the warrantless search. After first reasoning that probationers have a diminished expectation of privacy by virtue of their status, 107 S.Ct. at 3169 (quoting *Morrissey v. Brewer*, 408 U.S. 471, 480, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972)), the Court determined that the "special needs" of the probation system justified Wisconsin's search regulations allowing warrantless searches upon "reasonable grounds." Noting that in construing the regulations the Wisconsin Supreme Court had held that the search of Griffin's home was based on "reasonable grounds," id. 107 S.Ct. at 3169, the Court validated the regulatory scheme, concluding "[t]he search of Griffin's residence was 'reasonable' within the meaning of the Fourth Amendment because it was conducted pursuant to a valid regulation governing probationers." Id. at 3172.

Shea first contends that Wazelle did not reside in her home. The *Griffin* Court upheld a warrantless search of a probationer's home, that is, his residence. It did not decide whether a probation officer can enter a third person's home if the probationer did not reside there. The Court of Appeals for the Ninth Circuit, however, has addressed this issue. The court said, "If the police lack probable cause to believe the suspect is an actual resident, but have probable cause to believe he's present, they must get a search warrant." *United States v. Harper*, 928 F.2d 894, 896 (9th Cir.1991). This follows because the Supreme Court has held that an arrest warrant does not carry with it the authority to enter the home of a third person to seize a suspect and that to enter such a home

police need to get a search warrant. *Steagald v. United States*, 451 U.S. 204, 222, 101 S.Ct. 1642, 1653, 68 L.Ed.2d 38 (1981). If police armed with probable cause cannot enter the home of a third party to seize a criminal suspect without a search warrant, then a probation officer cannot enter Shea's home to see if Wazelle has violated a condition of probation, unless the officer reasonably believes that Wazelle resides there.

But here, there is no genuine dispute that Wazelle resided in Shea's home. Shea admits that he resided in her home "approximately one-half of the time." She concedes that he spent three or four days per week in her house. Wazelle listed Shea's address as his with the Probation Office. In *Harper* the court concluded that because the defendant entered the third party's home with his own key once or twice during a three day period police had "probable cause to believe that David resided there—but just barely." 928 F.2d at 896–97. *Harper* concluded this while reviewing a district court's finding of fact, whereas here we determine the issue on summary judgment standard. But still there is no question that a reasonable police officer could have believed that Shea's home was Wazelle's residence.

We turn now to Shea's main contention, that the warrantless entry was "unreasonable" under the Fourth Amendment and that *Griffin* is distinguishable. Shea distinguishes *Griffin* because the case involved the construction of a state statute. Shea Br 26. She is right, but this distinction does not help.

*Griffin* involved Wisconsin regulations that allowed parole officers to conduct warrantless searches pursuant to the terms of specific and pervasive regulations. See Wis Admin Code HSS § 328.21. The *Griffin* Court went no further than to hold that the "search of Griffin's home satisfied the demands of the Fourth Amendment because it was carried out pursuant to a *regulation that itself satisfies the Fourth Amendment's reasonableness requirement* under well established principles." 107 S.Ct. at 3168 (emphasis added). In concluding, the Court reiterated:

The search of Griffin's residence was "reasonable" within the meaning of the Fourth Amendment because it was conducted pursuant to a valid regulation governing probationers. This conclusion makes it unnecessary to consider whether, as the court below held and the State urges, *any* search of a probationer's home by a probation officer is lawful when there are "reasonable grounds" to believe contraband is present.

107 S.Ct. at 3172 (emphasis in original).

Thus two things appear: in *Griffin* the search was pursuant to valid regulations defining the conditions and limits of such searches; second, the Court left open the question whether without such regulations any search upon "reasonable grounds" is valid.

Unlike Wisconsin, Pennsylvania does not have a system of regulations governing warrantless searches of a probationer's home. But the district court concluded "Pennsylvania follows a system similar to Wisconsin's with regard to parolees," reasoning Pennsylvania caselaw accomplishes the same ends as the Wisconsin regulations. The district court believed that Pennsylvania caselaw defines the conditions and limits of such searches adequately for Fourth Amendment analysis.

In *Commonwealth v. Brown*, 240 Pa.Super. 190, 361 A.2d 846 (1976), a parole agent visited the parolee at his home. When the agent thought he saw stolen contraband, he left the premises and verified that the contraband was stolen. He then went back to the defendant's home accompanied by police officers and made a warrantless search. The Pennsylvania Superior Court held that the search violated the Fourth Amendment. While noting that "when performing his normal duties, a parole agent is not required to obtain a search warrant," 361 A.2d at 850, the court reasoned that once the agent "switches hats" and in all relevant respects "became a police officer, the administrative justification that generally permitted him to avoid acquisition of a warrant was no longer applicable." Id. at 850. See *Jarvis El v. Pandolfo*, 701 F.Supp. 98 (E.D.Pa.1988) (upholding a Pennsylvania parole officer's

warrantless search of parolee's home as complying with the Fourth Amendment under *Griffin* and *Brown* ); *Commonwealth v. Edwards*, 400 Pa.Super. 197, 583 A.2d 445 (1990) (same), allocatur granted 527 Pa. 641, 593 A.2d 415 (1991); *Commonwealth v. Devlin*, 294 Pa.Super. 470, 440 A.2d 562, 566 (1982) (probation officer is entitled to make warrantless searches to ensure that probationers do not violate the terms of probation).

In *Harper*, the Court of Appeals for the Ninth Circuit construed *Griffin* in a case where there was, apparently, no system of regulations governing the condition and limits of such searches. There, a parole officer and a police officer without warrants searched a parolee's home where they found illegal contraband. The court held that the search was lawful because the parole officer cooperated with the police pursuing legitimate parole objectives, and not police objectives. 928 F.2d at 897. The court reasoned that it is lawful for a parole officer to search a parolee's residence without a warrant if the police do not use a parole officer as a "stalking horse" to evade the Fourth Amendment. Id.

Shea contends that Smith and Baker are not entitled to summary judgment because this search was a general search for criminal activity instead of a search to determine if Wazelle violated his probation. The *Brown* court said: "The purpose of the search, not the physical presence of a parole agent, is the vital element. That is, once the rationale that justifies informal treatment of parolees ceases, the parolee's Fourth Amendment rights must be given full consideration." 361 A.2d at 850. The *Harper* court gave a similar formulation: "The proper question is whether the parole officer used her authority to help the police evade the fourth amendment's warrant requirement or whether the parole officer cooperated with the police to achieve her own legitimate objectives." 928 F.2d at 897.

We see no genuine issue of material fact about the purpose of the search. Wazelle's residence was searched for evidence that he violated the conditions of his probation. The only fact suggesting that Smith and Baker "switched hats" or that they were

the "stalking horse" for Rumgay (the police officer) came from this testimony of Fox, Shea's mother:

Q. Did she [Smith] know who Ace [Wazelle] was?

A. She acted like she knew who he was.

Q. Did she indicate that she had ever spoken with Ace before?

A. Well, just whenever she was saying to me, "How do I get there?" I thought that she knew who he was because it was like she didn't even have to question me about who he was, what connection does he have with being on probation. It was like she knew exactly who he was.

Q. Did she make any comments to you about wanting to get Ace?

A. She said, *"I'd like to get something on him."*

Q. She said that to you?

A. Yes.

Q. And what conversation was that?

A. It was like when I said, "Well, I thought Deanna was hurt and I thought he had been drinking." And she said, "Well, I'd like to get something on him. Give me the directions down there."

App 148–49 (emphasis added).

Even assuming Smith said what Fox alleged, Smith and Baker did not conduct the search in furtherance of police objectives, that is, to search for evidence of a crime rather than of a probation violation. Smith testified:

Q. [After the telephone call from Fox], What did you tell Mr. Stradek [the supervisor]?

A. I hold him that I received a phone call from Fran Fox, who at that time identified herself as Deanna Shea's mother, who was living with Mr. Armand Wazelle, III and that she had apparently felt that a probation violation or parole violation had occurred the previous evening involving Mr. Wazelle and also she felt that her daughter was endangered and she wanted our department to investigate at the residence in Mayport.

Q. What did Mr. Stradek say to you in that regard?

A. He stated that he wanted me to go down and investigate it. He instructed me to call the Pennsylvania State Police at the Punxsutawney barracks to request an officer to assist and his reasoning for doing that was he stated Mr. Wazelle has a tendency for violence, he is on supervision for aggravated assault and you may need some assistance if you go to the residence. So I called the state police and they instructed me that the trooper would be there from Ringold.

App 182.

The only sliver of evidence to support Shea's contention that the defendants were searching for evidence of a crime and were conducting police duties is Smith's alleged statement about "getting something" on Wazelle. Smith's statement about "getting something" on Wazelle, if true, expresses nothing more than a subjective wish or intent. That wish or intent, however, is irrelevant, *Anderson*, 107 S.Ct. at 3042, and does not create a genuine dispute.

It is clear from the record that (1) Smith received a distress call from Fox, (2) Fox gave her information that would raise reasonable suspicion that Wazelle violated the condition of his probation (either drinking or at the very least violent behavior), (3) Smith conveyed this information to her supervisor, and (4) her supervisor told her to go to Shea's residence with a police officer to see if Wazelle violated the condition of his probation. See *Commonwealth v. Lyons*, 382 Pa.Super. 438, 555 A.2d 920, 923–24 (1989) (police officer may accompany parole or probation officer). Smith's search furthered the probation agency's objectives. It was not a police search. When Smith was ordered to go to Shea's premises to investigate and the other defendants accompanied her, "a reasonable officer could have believed [their] warrantless search to be lawful, in light of clearly established law and the information the searching officers possessed." *Anderson*, 107 S.Ct. at 3040. The defendants acted within the contours of the law as it existed at that time, are entitled to qualified immunity, and summary judgment was properly granted them.

Because "[q]ualified immunity covers civil liability claims brought against police officers under both 42 U.S.C. § 1983 and the common law," *Capone v. Marinelli*, 868 F.2d 102, 106 n. 6 (3d Cir.1989), summary judgment was also proper as to the pendent state claims.

### IV.

We hold that the probation officers and the police officer in this case are entitled to qualified immunity because their search, although warrantless, was justified because they were reasonably searching for evidence of a probation violation. We will affirm the district court's order granting summary judgment in favor of all defendants.