977 F.2d 593
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Earl Emanuel LOVELACE, Defendant-Appellant,
 No. 91-50830.
 United States Court of Appeals, Ninth Circuit.
 Submitted Aug. 19, 1992.*
Decided Oct. 15, 1992.
 
 1
 Before TANG and CYNTHIA HOLCOMB HALL, Circuit Judges and WALKER,** District Judge.
 
 
 2
 MEMORANDUM***
 
 
 3
 On November 12, 1991, Earl Emanuel Lovelace was convicted following his conditional guilty plea to being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Having preserved his right to do so, he timely appeals the district court's refusal to suppress evidence obtained at the time of his arrest.
 
 FACTS
 
 4
 Lovelace was arrested on October 4, 1989 at an apartment in San Diego pursuant to a parole violation warrant issued two days earlier by the United States Parole Commission. Along with U.S. Marshals from San Diego, the cadre of arresting officers included Detective Henry Kozen of the Suffolk, New York Police Department. Detective Kozen considered Lovelace a suspect in a series of armed bank robberies he was investigating in New York State. The district court found that once the officers had conducted a protective sweep of the premises, they asked for and received Lovelace's permission for a general search. Deputy Marshal David Dallaire opened a gym bag which he had found in the bedroom closet. Stuffed inside two black socks he found a Taurus .357 revolver and six rounds of .357 semi-jacketed 162 grain bullets.
 
 DISCUSSION
 A. The Validity of the Warrant
 
 5
 According to Lovelace, the district court erred in finding that the parole warrant was not used as a subterfuge to allow the New York detective to enter and search his apartment as part of the bank robbery investigation. We review the district court's finding under the clearly erroneous standard. United States v. Harper, 928 F.2d 894, 897 (9th Cir.1991).
 
 
 6
 Lovelace contends that regardless of the legitimacy with which the Parole Commission issued the warrant for his arrest, it was used as a subterfuge by the New York police in order to gain entry into his apartment. New York Detectives Kozen and Franko flew to San Diego with the knowledge that the federal warrant was immediately forthcoming. Not only did both men cooperate extensively with both the San Diego police and the U.S. marshals, Detective Kozen actually participated in Lovelace's arrest. Asserting that the two police officers from New York had absolutely no reason to be involved in the execution of a federal arrest warrant in San Diego, Lovelace charges that they were illegitimately "piggybacking" on the federal warrant.
 
 
 7
 We find Lovelace's contentions unpersuasive. By itself, the fact that the New York officers worked closely with the federal marshals in finding and arresting Lovelace constitutes no evidence of impropriety. It is entirely legitimate for officers from federal and state law enforcement agencies to cooperate in the pursuit of their respective investigations. Consequently, when one law enforcement agency executes a search or arrest warrant, "the presence of a second law enforcement agency does not in and of itself violate the Fourth Amendment." United States v. Washington, 797 F.2d 1461, 1470 n. 13 (9th Cir.1986).
 
 
 8
 The crucial question is whether the federal agents executed the parole arrest warrant "in good faith or whether it was meant to pave the way" for the New York detectives to enter Lovelace's apartment. Id. at 1470. Lovelace has given us no reason to think that the federal marshals were using the warrant as a pretext on behalf of the New York police. As the district judge concluded, Lovelace's parole officer in New York did not request the warrant in order to facilitate the robbery investigation, but as a response to Lovelace' numerous parole violations. In executing that warrant, the federal marshals in San Diego were simply doing their job.
 
 B. The Arrest
 
 9
 Lovelace next claims that his arrest was unlawful because the arresting officers lacked the authority to enter the apartment in which they found him. Since the apartment was leased to Danny and Shelia Taylor rather than himself, Lovelace maintains that it was not his residence. Citing Perez v. Simmons, 884 F.2d 1136, 1140 (9th Cir.1988), on reh'g amended, 900 F.2d 213 (9th Cir.1990), he invokes the rule that a warrant for one person's arrest does not justify entry into the residence of a different person absent exigent circumstances.
 
 
 10
 We find that Lovelace's claim fails even if we grant his premise that the apartment was not his residence. His reliance on Perez is misplaced, for that case deals with the Fourth Amendment rights of the homeowner, not of the person for whom the arrest warrant was issued. In Perez, the police entered the apartment of Irma Perez with a warrant for the arrest of her brother, who occasionally spent the night there. After her arrest for harboring a fugitive, Perez brought a § 1983 action. The opinion made it quite clear that its analysis concerned the Fourth Amendment rights of Irma Perez, not those of her brother.
 
 
 11
 United States v. Underwood, 717 F.2d 482 (9th Cir.1983) (en banc), cert. denied, 465 U.S. 1036 (1984) states the proper standard under which Lovelace's Fourth Amendment claims must be analyzed. Underwood makes it clear that "a person has no greater right of privacy in another's home than his own." Thus even if the apartment in which he was found was not his own residence, Lovelace's Fourth Amendment rights were protected as long as the agents had a warrant for his arrest and reason to believe he was in the location where they found him. Id. at 484.
 
 
 12
 Our discussion above makes it clear that the officers had a valid warrant for Lovelace's arrest. The district court's finding that the officers had probable cause to believe Lovelace was in the apartment had solid support. The manager and a next door neighbor had recognized a photograph of Lovelace, identifying him as the occupant of the apartment. When giving the officers the keys to the apartment on the morning of the arrest, the manager told them that he had seen Lovelace on the day previous day and that Lovelace usually slept late. No violation of Lovelace's Fourth Amendment rights occurred in the execution of the warrant for his arrest.
 
 C. The Validity of the Consent to Search
 
 13
 Finally, Lovelace maintains that the search of the gym bag in which the officers found the revolver and ammunition was not justified by his consent. According to Lovelace, his general consent to search the apartment was not valid because it was coerced and involuntary. Looking at all the circumstances, we review the district court's conclusion that Lovelace's consent to the search was voluntary for clear error. United States v. Brown, 884 F.2d 1309 (9th Cir.1989), cert. denied, 493 U.S. 1025 (1990). We find no such error in this case.
 
 
 14
 In United States v. Shaibu, 920 F.2d 1423, 1426 (9th Cir.1990), we reiterated the burden of proof which the government must bear in order to show that a defendant gave effective consent to a search request. "The government must prove that consent was freely given. It must show that there was no duress or coercion, express or implied. The consent must be 'unequivocal and specific' and 'freely and intelligently given.' There must be convincing evidence that defendant has waived his rights. There must be clear and positive testimony" (quoting United States v. Page, 302 F.2d 81, 83-84 (9th Cir.1992).
 
 
 15
 Applying this test, the district court found that Lovelace had consented voluntarily and without coercion to the search of his apartment. In particular, the court noted that in response to the officer's request for permission to search the apartment, Lovelace replied "Go ahead. My life is over anyway. I'm 34 going on 64." In making its finding, the court explicitly relied on its evaluation of its credibility of the competing testimony offered by Lovelace and the arresting officers. We are particularly reluctant to disturb factual findings which rest on the district court's first hand assessment of the credibility of witnesses. Anderson v. City of Bessemer, 470 U.S. 564, 573 (1984).
 
 
 16
 Finally, Lovelace argues that even if his consent to search the apartment was valid, the gym bag fell outside of the scope of that consent. He points to no place in the record where he raised the issue below. We therefore review only for plain error. United States v. Bustillo, 789 F.2d 1364 (9th Cir.1989). While the district court did not address this precise argument, it did find that the gun and the bullets were seized pursuant to Lovelace's valid consent to the search. The court based this finding on the sworn testimony of two deputy U.S. marshals. In light of this finding, no plain error existed.
 
 
 17
 The judgment of the district court is AFFIRMED.
 
 
 
 *
 The panel finds this case appropriate for submission without oral argument pursuant to Fed.R.App.P. 34(a) and Ninth Cir.R. 34-4
 
 
 **
 The Hon. Vaughn R. Walker, United States District Judge for the Northern District of California, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir.R. 36-3