21 F.3d 1118
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Michael Anthony RAY, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Sean Tyler WILLIAMS, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Terry Lee RAY, Defendant-Appellant.
 Nos. 93-10102, 93-10142 and 93-10207.
 United States Court of Appeals, Ninth Circuit.
 Submitted Dec. 14, 1993.*
Decided April 13, 1994.
 
 Before: LAY,** HALL and THOMPSON, Circuit Judges.
 
 
 1
 MEMORANDUM***
 
 
 2
 Michael Anthony Ray and Sean Tyler Williams appeal the district court's denial of their motions to suppress evidence, and their subsequent convictions on federal firearms charges. Terry Lee Ray appeals his conviction, after a separate jury trial, on four counts of federal firearms violations and argues that the district court erred in denying his motion to dismiss the charges against him on double jeopardy grounds. The cases were consolidated on appeal. We reverse the convictions of Michael Ray and Sean Williams, and affirm the conviction of Terry Lee Ray.
 
 Michael Ray and Sean Williams
 
 3
 The police and the Bureau of Alcohol, Tobacco and Firearms ("ATF") had a valid outstanding warrant for the arrest of Terry Ray for the illegal possession of firearms. Terry Ray was already awaiting trial in Nevada state court for a drug-related arrest.
 
 
 4
 On July 2, 1992, Las Vegas Metropolitan Police Department ("LVMPD") officer Tim Shalhoob received information that Michael Ray (Terry's brother) was staying at the Stardust Hotel in Las Vegas. Shalhoob conveyed that information to Special Agent Sarah Pelton of the ATF. Shalhoob did not indicate that Terry Ray was staying at the Stardust. ATF agents went to the Stardust Hotel and met with Stardust security officers. The Stardust security officers confirmed that Michael Ray registered for two rooms at the Stardust. The agents then showed the hotel's registration clerk a photographic lineup, including Michael Ray and Terry Ray, and the clerk identified Terry Ray as the individual who accompanied Michael Ray when Michael paid for the two hotel rooms. Both rooms were registered in Michael Ray's name only.
 
 
 5
 The ATF agents went to the rooms and knocked on the doors to both rooms but there was no answer. Hotel security officers then opened both doors simultaneously using a "security key," without the consent of Michael Ray. Williams was in room 11509. The agents retrieved a gun from Williams's pocket with an obliterated serial number. Terry and Michael Ray were in the adjoining room 11507. After securing both Ray brothers, the police and ATF agents conducted a search of both rooms and recovered several weapons. All three defendants were then taken into custody and placed under arrest.
 
 
 6
 Michael Ray conditionally pleaded guilty to one count of being a felon in possession of a firearm, in violation of 18 U.S.C. Sec. 922(g)(1), and Williams conditionally pleaded guilty to possessing a firearm with an obliterated serial number, in violation of 18 U.S.C. Sec. 922(k) and 18 U.S.C. Sec. 924(a)(1)(B). Michael Ray and Williams argue on appeal that the district court erred in denying their respective motions to suppress evidence obtained from the search of their hotel rooms. They argue that the warrantless entry and search of the rooms violated their Fourth Amendment rights.
 
 
 7
 Absent consent or exigent circumstances, warrantless entry into a house to conduct a search or make an arrest is unreasonable under the Fourth Amendment. Payton v. New York, 445 U.S. 573 (1980). The protection that the Fourth Amendment provides against unreasonable searches and seizures in the home extends to hotel rooms. See Hoffa v. United States, 385 U.S. 293, 301 (1966); Stoner v. California, 376 U.S. 483, 490 (1964); United States v. Holzman, 871 F.2d 1496, 1506 (9th Cir.1989). In Payton, the Supreme Court held that "an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." Payton, 445 U.S. at 603. However, in Steagald v. United States, 451 U.S. 204, 215-20 (1981), the Supreme Court held that, absent exigent circumstances or consent, an arrest warrant does not justify entry into a third person's home to search for the subject of the arrest warrant. "[U]nder Steagald, if the suspect is just a guest of the third party, then the police must obtain a search warrant for the third party's dwelling in order to use evidence found against the third party." United States v. Litteral, 910 F.2d 547, 553 (9th Cir.1990). The Ninth Circuit has most recently stated the constitutional test applicable in this context as follows:
 
 
 8
 [T]he police may enter a home with an arrest warrant only if they have probable cause to believe the person named in the warrant resides there. If the police lack probable cause to believe the suspect is an actual resident, but have probable cause to believe he's present, they must get a search warrant.
 
 
 9
 United States v. Harper, 928 F.2d 894, 896 (9th Cir.1991) (citations omitted).
 
 
 10
 In ruling on the defendants' motions, the district court observed:
 
 
 11
 The defendants argue that it was Williams, and not Terry Ray, who accompanied Michael Ray to pay for the rooms. At the hearing, both defendants testified that Williams had accompanied Michael Ray to the desk. Defendants' argument is immaterial. At issue is what information was available to the agents when they executed the arrest warrant. This information included the identification of Terry Ray as one of the individuals who paid for the hotel room. No evidence was submitted that contrary facts were available to the agents to indicate that they could not rely on the clerk's identification. Thus, the identification, along with the other information available, gave the agents probable cause to believe Terry Ray was a co-tenant of the hotel rooms.
 
 
 12
 We must respectfully disagree. In Steagald, the Supreme Court noted that "while an arrest warrant and a search warrant both serve to subject the probable-cause determination of the police to judicial review, the interests protected by the two warrants differ." 451 U.S. at 212-13. The Court noted that an arrest warrant "primarily serves to protect an individual from an unreasonable seizure," while a search warrant "safeguards an individual's interest in the privacy of his home and possessions against the unjustified intrusion of the police." Id. at 213. In Steagald, officers relied upon an arrest warrant to enter the home of a third person in which the subject of the arrest warrant was thought to be. The Court explained that while the arrest warrant protected the interests of the suspect, "it did absolutely nothing to protect [the homeowner's] privacy interest in being free from an unreasonable invasion and search of his home." Id.
 
 
 13
 In Perez v. Simmons, 884 F.2d 1136 (9th Cir.1988), cert. granted & judgment vacated on other grounds, 490 U.S. 1016 (1989), we addressed what constitutes a person's "home" within the meaning of Payton and Steagald. We reiterated that for purposes of determining a suspect's Fourth Amendment rights, courts have uniformly found that a hotel room is, however temporarily used, equivalent to a private home or office. Id. at 1141; see e.g., Hoffa, 385 U.S. at 301; Eng Fung Jem v. United States, 281 F.2d 803, 804-05 (9th Cir.1960). Thus, for Fourth Amendment purposes, Michael Ray, as the individual who rented the rooms, had the full expectation of privacy enjoyed by an individual in his own home. Williams, as a guest of Michael Ray's in the room, likewise had an expectation of privacy in Michael Ray's room. See Minnesota v. Olson, 495 U.S. 91, 96-97 (1990).[1] The only issue presented is whether the agents had probable cause to believe that Terry Ray was a co-tenant of the hotel room, so as to obviate the need for a search warrant. See Harper, 928 F.2d at 896.
 
 
 14
 The information the authorities had was scant: There was an arrest warrant for Terry Ray, and he knew it. Michael Ray had rented two hotel rooms, both in Michael's name. Terry Ray was not listed on the hotel registry, but the hotel clerk identified Terry Ray as the person who accompanied Michael when Michael paid for the rooms. ATF Agent Pelton, who was the lead agent in the case, testified at the suppression hearing that Michael Ray had come down to pay for the rooms approximately one hour before Pelton arrived at the hotel. When asked what she did with that information, Pelton indicated, "[s]ince we had an arrest warrant, we went up to those rooms." When asked why the agents came to the hotel in the first place, Pelton stated, "[t]o find Terry Ray." When asked why she inquired about Michael Ray, Pelton stated, "[t]he rooms were registered in Michael's name, so I started with that." No one saw Terry Ray enter or exit the hotel rooms. There was no indication that he had his own key. There was no evidence that Terry Ray had been coming and going as though he had taken up residence in the hotel rooms. ATF Agent Pelton herself testified that the rooms had been paid for only an hour before the raid occurred, hardly the time frame which gives rise to an inference that someone has taken up a new "residence." Indeed, there is no evidence at all that Terry Ray was a co-tenant of the hotel room, as opposed to a guest or simply a visitor.
 
 
 15
 Michael Ray did nothing to surrender his reasonable expectation of privacy in the hotel rooms. They were registered in his name only. Williams was in a separate room and at the time of his arrest outside the presence of either Michael or Terry Ray. The only basis for probable cause was that Terry Ray was Michael's brother. Although probable cause likely existed that Terry Ray was in the hotel room, it does not follow that, by accompanying his brother to the registration desk, he had taken up residence there. "If the police lack probable cause to believe the suspect is an actual resident, but have probable cause to believe he's present, they must get a search warrant." Harper, 928 F.2d at 896.
 
 
 16
 We also note that no exigent circumstances existed to justify a deviation from the warrant requirement. The authorities lacked probable cause to suspect that illegal activities were taking place in the rooms. Thus, there was no danger that evidence would be destroyed. In light of the number of agents (eight, including the security officers) that raided the room, it would have been quite simple to monitor the doors to the rooms while dispatching an agent to obtain a search warrant. If Terry Ray emerged, the agents could have lawfully arrested him. If he did not, once a warrant was procured, the rooms could have been lawfully entered and Terry Ray arrested. We repeat what this court observed in Harper:
 
 
 17
 There's a simple way for the police to avoid many complex search and seizure problems: Get a search warrant. Had they obtained a search warrant in this case--as they well could have--there would have been no motion to suppress, no hearing, ... and no thorny issues for us to resolve on appeal. But they didn't. So once again we consume a few pages of the Federal Reporter analyzing the circumstances under which the police may enter a home without a search warrant.
 
 
 18
 Harper, 928 F.2d at 895.
 
 
 19
 The district court erred in denying Michael Ray and Sean Williams's motions to suppress.[2] Since the evidence was essential to the conviction of these two defendants, their convictions must be reversed.
 
 Terry Ray
 
 20
 Following his arrest, Terry Ray was charged in five counts of a ten count indictment.[3] The matter went to trial on November 16, 1992. On the first day of trial, the Government presented the testimony of ATF Agent Pelton. Pelton's testimony tended to establish that the defendant possessed the guns referred to in Count Six of the indictment on April 7, 1992 (the date charged in that count), but did not refer to the dates the defendant received those weapons. The district court observed that receipt and possession were not the same and that the United States had a problem with proof on Count Six unless it had evidence of receipt. Upon commencement of the second day of trial, the prosecution advised the district court that the government wished to recall the case agent, Pelton, to establish receipt of two of the guns in Count Six. The district court permitted Pelton to testify that Terry Ray admitted on April 7, 1992 that he received one gun "about a month ago." When asked about the second gun, Pelton responded that the defendant admitted shooting it the day before April 7, 1992. Ray's counsel moved for a mistrial. The district court granted the motion on the basis of discovery violations[4] and declared a mistrial on November 17, 1992. The same day, the United States returned a superseding indictment containing eleven counts against Ray. By order of December 15, 1992, the district court denied Terry Ray's motion to dismiss the indictment and bar retrial on double jeopardy grounds. The court, however, granted in part Ray's motion to dismiss all counts not previously set forth in the original indictment on the grounds of vindictive prosecution.
 
 
 21
 The case went to trial on the remaining counts, which were essentially the same charges brought against Ray in the first indictment. Following a two day trial, the jury returned a verdict of not guilty as to count 1 (one occasion of receiving a firearm while under indictment) and guilty as to the remaining counts. Terry Ray appeals the district court's denial of his motion to bar retrial on double jeopardy grounds, arguing that the United States intended to provoke the defendant into moving for a mistrial.
 
 
 22
 As the district court noted, the Double Jeopardy Clause does not usually bar the retrial of a defendant if a motion for a mistrial made by the defendant is granted. In Oregon v. Kennedy, 456 U.S. 667 (1982), the Supreme Court held that a defendant who seeks to bar a retrial on double jeopardy grounds following a successful motion for mistrial may do so only when the conduct giving rise to the successful motion for mistrial was intended to provoke the defendant into moving for a mistrial. Id. at 679. Barring retrial may be proper on double jeopardy grounds only when prosecutorial misconduct was "intended to 'goad' the defendant into moving for a mistrial[.]" Id. at 676. This exception is a narrow one. "Prosecutorial conduct that might be viewed as harassment or overreaching, even if sufficient to justify a mistrial on defendant's motion ... does not bar retrial absent intent on the part of the prosecutor to subvert the protections afforded by the Double Jeopardy Clause." Id. at 675-76.
 
 
 23
 The courts applying the Kennedy rule have focused upon three objective factors in determining whether the Government attempted to induce the defendant to move for a mistrial: 1) whether the Government objected to the motion; 2) whether the Government's case was going badly at the time the motion was made, causing the prosecutor to fear acquittal and affirmatively seek a mistrial; and 3) whether the government would gain an advantage from a new trial. See United States v. Lun, 944 F.2d 642, 644-46 (9th Cir.1991). Ray acknowledges that the district court applied the appropriate legal standard, but argues that its findings were clearly erroneous.
 
 
 24
 The district court found that, while the United States did not directly object to the granting of a mistrial, it was clear from the record that counsel for the United States attempted to dissuade the court from granting a mistrial by explaining away the Rule 16 violation. The district court found, as to the second factor, that:
 
 
 25
 [W]hile it is true that the Government's case was going badly in that it apparently proceeded under the mistaken view that proof of possession was sufficient to establish a violation of Sec. 922(n) and that Count Eight of the Indictment mistakenly charged receipt of a gun before the date it was purchased, the Government would not have known at the time of the first trial that things would necessarily have gone better at a second trial.
 
 
 26
 The district court concluded that the United States would not necessarily believe itself to be better able to pursue the charges of receipt in a second trial than in the first, and in fact found that the United States did not reseek the Sec. 922(n) charges (requiring receipt) in the superseding indictment.
 
 The district court concluded that:
 
 27
 Even if the Government's actions could be considered misconduct, and even if the defendant "had no choice" but to seek mistrial, that does not bar a retrial.... The defendant must demonstrate that the prosecutor intended such results. The Government may have made a mistake in not disclosing the defendant's statements and in confusing possession with receipt, but its re-calling Sarah Pelton to the stand and eliciting testimony from her concerning the defendant's receipt of weapons was an attempt to prove an essential element of its case not an attempt to goad the defendant into moving for a mistrial.
 
 
 28
 We find that the district court's factual findings were not clearly erroneous, and an objective review of the circumstances does not indicate that the United States intended to goad the defendant into moving for a mistrial. Mere negligence on the part of the United States is insufficient to bar a retrial under the principles articulated in Kennedy. See Kennedy, 456 U.S. at 675-76. The prosecutor, in eliciting testimony from Agent Pelton, was attempting to remedy his mistake in proof. The record does not reveal that the United States was affirmatively seeking a mistrial.
 
 
 29
 Judgments of conviction of Michael Ray and Sean Williams are reversed. Judgment of conviction of Terry Ray is affirmed.
 
 
 
 *
 This panel unanimously agrees that this case is appropriate for submission without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 Hon. Donald P. Lay, Senior Circuit Judge for the Eighth Circuit, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Several of Williams's personal effects were found in the rooms. The United States does not dispute that this was sufficient to establish that Williams was Michael Ray's guest in the hotel rooms, and thus that Williams has standing to raise the Fourth Amendment issue. See United States v. Grandstaff, 813 F.2d 1353, 1357 (9th Cir.), cert. denied, 484 U.S. 837 (1987)
 
 
 [2]
 In view of our ruling, required under Steagald, it is not necessary for us to determine whether the search of both rooms was so extensive in scope to be outside the rule in Chimel v. California, 395 U.S. 752, 763 (1969)
 
 
 [3]
 Terry Ray was charged in Counts 6, 8 and 10 with receipt of a firearm by a person under indictment, in violation of 18 U.S.C. Sec. 922(n), although the counts were entitled "Possession of a Firearm by a Person Under Indictment." In counts 7 and 9 Ray was charged with falsification of information to a licensed federal dealer with respect to the sale of firearms in violation of 18 U.S.C. Sec. 922(a)(6). His motion for severance was granted, and he was tried alone
 
 
 [4]
 Counsel for Ray objected on the ground she had never been provided discovery of any evidence of receipt or of Terry Ray's statement