**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Vernon WATTS, Defendant–Appellant.**

No. 94–10272.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 14, 1995.

Decided Sept. 28, 1995.

---

Charles M. Bonneau, Sacramento, California, for defendant-appellant.

Jodi B. Rafkin, Assistant United States Attorney, Sacramento, California, for plaintiff-appellee.

Before FLETCHER, POOLE, and O'SCANNLAIN, Circuit Judges.

## OPINION

FLETCHER, Circuit Judge:

Vernon Watts appeals his conviction and sentence for possessing with the intent to distribute crack cocaine. We affirm the conviction but vacate Watts's sentence and remand for resentencing.

### I. FACTUAL BACKGROUND

The events leading to Watts's arrest and conviction began with the suspicions of Watts's probation officer, John Demmel. Although California's probationers are subject to a condition authorizing warrantless searches of their property, Demmel was well aware that some probationers would lie to their probation officers about where they were living so they could continue to engage in criminal activity without being hindered by probation searches. Demmel had begun to suspect that Watts was one such probationer, telling Demmel that he lived with his mother on Florinda Way while he continued his criminal activity undetected at another residence.

When Demmel mentioned his concern to Detective James Cooper of the Sacramento County Sheriff's Department, Cooper told Demmel that he had learned from a confidential informant that Watts was living on the south side of the county with a woman named Sonja Lee and her children, that he drove a Ford Taurus and a minivan, and that he was selling cocaine. His suspicions raised, Demmel asked Cooper to locate Watts's actual residence by following Watts after he left his next probation meeting.

About a week later, when Watts drove away from Demmel's office in a Ford Taurus, Cooper followed. Although Cooper lost Watts before locating his residence, he did not return to Demmel empty handed: He informed Demmel that Watts was driving a Ford Taurus registered in Watts's name. Demmel found this suspicious because, according to Watts, he was unemployed and had no transportation. Demmel and Cooper discussed the possibility of organizing a larger surveillance team to follow Watts to his residence.

Conveniently, Demmel was one of four probation officers assigned to the Crack

Rock Impact Project (CRIP), a federally funded, multi-agency task force devoted to enforcing the laws against crack cocaine. Demmel asked Detective Emanuel Rivera, another member of CRIP, to assist in the surveillance. After a briefing with other members of CRIP, Demmel instructed the participating police officers to conduct a probation search of Watts's residence if they were able to locate it and to stop and search Watts's vehicle if they observed evidence of drug trafficking.

When Watts left Demmel's office in his Ford Taurus after his next scheduled probation interview, Rivera and other CRIP officers followed, staying in contact with Demmel by telephone. The officers hit pay dirt. Watts drove to a house at 8374 Wheatland Way and went inside. Rivera called the electric company and determined that the house's utilities were registered to Sonja Lee. An automobile parked in the driveway also was registered to Lee.

When Watts left the house in his Taurus with a woman and child, Demmel asked the officers to continue their surveillance. Later in the day, Watts dropped the woman and child back at the Wheatland Way address and drove alone to the Florinda Way address where he supposedly lived with his mother. The officers watched Watts walk to the front door, knock, wait a while, and then leave when no one responded.

Watts then went to a house on Bicentennial Circle for approximately one minute. After he left, Watts drove using what the officers believed to be counter-surveillance techniques, such as driving at variable speeds and making numerous, apparently unnecessary turns. Based on his observations, Rivera believed that Watts had participated in a drug deal at the Bicentennial Circle address. Pursuant to Demmel's request at the CRIP briefing session, Rivera stopped Watts to conduct a probation search of his vehicle. Demmel arrived shortly thereafter. In the search of Watts's car, police discovered a set of keys and a garage door opener. Police later determined that one of the keys and the garage door opener were to the front door and the garage of the Wheatland Way house, respectively.

Demmel directed the officers to conduct a probation search of the Wheatland Way house. When police entered the house with Watts's key, Lee was inside. She told police that she and Watts lived there together. Officers searched the house and found crack cocaine in the kitchen cabinet and two loaded firearms and ammunition in a bedroom closet. After the search, Watts confessed that the guns and drugs were his.

Watts was indicted for possessing cocaine base with intent to distribute, in violation of 21 U.S.C. § 841(a)(1), and for using a firearm in relation to a drug offense, in violation of 18 U.S.C. § 924(c). Watts moved to suppress the evidence obtained in the search of the house, arguing that the probation search was a subterfuge for a criminal investigation and that Demmel and police lacked sufficient reason to believe that he lived at Wheatland Way. The district court denied Watts's motion after a hearing.

After a jury trial, Watts was convicted on the narcotics charge and acquitted on the weapons charge. The district court sentenced Watts to 262 months in prison and 60 months of supervised release. He appeals.

## II. LAWFULNESS OF THE PROBATION SEARCH

Watts argues that the district court should have suppressed the fruits of the probation search because Demmel was acting as a "stalking horse" for police and because Demmel lacked a reasonable basis for believing that Watts lived at the Wheatland Way address. We disagree, and we affirm Watts's conviction.

### A

Because a state's operation of its probation system presents "special needs" beyond normal law enforcement which render impracticable the Fourth Amendment's usual warrant and probable cause requirements, probation searches conducted pursuant to state law satisfy the Fourth Amendment's reasonableness requirement. *Griffin v. Wisconsin,* 483 U.S. 868, 872–80, 107 S.Ct. 3164, 3167–72, 97 L.Ed.2d 709 (1987). However, a

probation search may not be used as a subterfuge for a criminal investigation. *See Latta v. Fitzharris,* 521 F.2d 246, 249 (9th Cir.) (en banc), *cert. denied,* 423 U.S. 897, 96 S.Ct. 200, 46 L.Ed.2d 130 (1975). Watts argues that the district court should have suppressed the fruits of the probation search because Demmel was acting as a "stalking horse" for police when he authorized the search. We review for clear error the district court's factual determination that Demmel was not acting as a stalking horse. *See United States v. Butcher,* 926 F.2d 811, 815 (9th Cir.), *cert. denied,* 500 U.S. 959, 111 S.Ct. 2273, 114 L.Ed.2d 724 (1991); *United States v. Jarrad,* 754 F.2d 1451, 1454 (9th Cir.), *cert. denied,* 474 U.S. 830, 106 S.Ct. 96, 88 L.Ed.2d 78 (1985).

■ A probation officer acts as a stalking horse if he conducts a probation search on prior request of and in concert with law enforcement officers. *United States v. Richardson,* 849 F.2d 439, 441 (9th Cir.), *cert. denied,* 488 U.S. 866, 109 S.Ct. 171, 102 L.Ed.2d 141 (1988); *Smith v. Rhay,* 419 F.2d 160, 162–63 (9th Cir.1969). However, collaboration between a probation officer and police does not in itself render a probation search unlawful. *See United States v. Harper,* 928 F.2d 894, 897 (9th Cir.1991) (parole officer was not a stalking horse simply because police helped him locate parolee); *Jarrad,* 754 F.2d at 1454 (fact that police investigation preceded parole search does not render the search a subterfuge); *United States v. Gordon,* 540 F.2d 452, 453 (9th Cir.1976) (finding a lawful probation search even though Narcotics Task Force agents accompanied the probation officer to expedite the search). The appropriate inquiry is whether the probation officer used the probation search to help police evade the Fourth Amendment's usual warrant and probable cause requirements or whether the probation officer enlisted the police to assist his own legitimate objectives. *Harper,* 928 F.2d at 897. A probation officer does not act as a stalking horse if he initiates the search in the performance of his duties as a probation officer. *Butcher,* 926 F.2d at 815; *Jarrad,* 754 F.2d at 1454.

■ The district court determined that Demmel, not the police, decided to conduct the probation search. Normally this finding would be sufficient to support the determination that Demmel was not a stalking horse. *See Harper,* 928 F.2d at 897; *Butcher,* 926 F.2d at 815; *Richardson,* 849 F.2d at 441; *Jarrad,* 754 F.2d at 1454. However, Demmel's dual role as both probation officer and member of the concededly "enforcement oriented" CRIP team renders the relevant inquiry more difficult. Watts argues that Demmel was acting more as a police officer than a probation officer.

We share the district court's concern that the participation of a probation officer on a project devoted to law enforcement carries the risk of abusing the probation officer's ability to conduct searches without a warrant and with less than probable cause, a power that is constitutionally permissible only because of the probation system's " 'special needs' *beyond normal law enforcement.*" *Griffin,* 483 U.S. at 873–74, 107 S.Ct. at 3168–69 (emphasis added). We are especially troubled by the district court's express finding that "at least one of the purposes of the CRIP Team is to allow for probation searches in cases where police officers want to search the residence, vehicle or property of a probationer and to avoid the necessity of getting a warrant for the search."

However, the district court's ultimate conclusion that Demmel "was calling the shots" and that he was motivated by the legitimate objectives of the probation system is not clearly erroneous. The district court found that Demmel, as Watts's probation officer and before the participation of any police officers, suspected that Watts did not actually live with his mother on Florinda Way and had returned to the business of selling drugs. His suspicions grew when Cooper—not a member of the CRIP team—told him that, according to an informant, Watts was selling cocaine again and living with Lee somewhere other than on Florinda Way. Police officers on the CRIP team became involved only at the request of Demmel, who sought their assistance locating Watts's actual residence, a task which proved elusive when attempted by Cooper alone. This would be a different

case if police officers had targeted a suspect as part of a normal law enforcement investigation and then enlisted the help of a probation officer in order to search the suspect's home without a warrant supported by probable cause. *See Smith*, 419 F.2d at 162–63 (not a valid parole search when police enlisted parole officer to assist in criminal investigation). Whatever potential for or actual abuse of probation searches which may exist in operating CRIP, the district court did not commit clear error in determining that, in this case, CRIP officers acted as support for a legitimate probation search.

### B

■ We turn next to Watts's argument that the probation search, even if not a subterfuge, nevertheless was unlawful because Demmel lacked the requisite level of suspicion that Watts lived at the Wheatland Way house. The parties agree that a probation search must be supported by some reason to believe that the probationer resides at the premises to be searched. *See Harper*, 928 F.2d at 896; *United States v. Dally*, 606 F.2d 861, 863 (9th Cir.1979). However, the parties dispute the level of suspicion necessary to support a probation search.

There is some tension among our cases regarding whether a probation search must be supported by probable cause to believe that the probationer resides on the premises or whether a "reasonable" belief will suffice. In *Harper*, we characterized the requisite level of suspicion as probable cause. Our principal holding in that case was that, under the Supreme Court's decision in *Griffin*, police could search a parolee's home to execute an arrest warrant issued by a parole board. *Harper*, 928 F.2d at 896. We also held that police could conduct such a search only if they had "probable cause" to believe that the arrestee actually lived at the place to be searched. *Id.*

However, before *Harper* we held in *Dally* that a parole search was lawful because the parole officer had a "reasonable basis" and "reasonable belief" that the parolee had moved to the searched residence. *Dally*, 606 F.2d at 863. Moreover, despite our mention in *Harper* of a probable cause requirement,

we cited with approval in that case the "reasonable belief" standard employed in *Dally*. *See Harper*, 928 F.2d at 896 (citing *Dally*, 606 F.2d 861). Our decision in *United States v. Davis*, 932 F.2d 752 (9th Cir.1991), is also relevant. In *Davis*, decided shortly after *Harper*, we held that an item such as a closed container falls within the scope of a probation search as long as there is "reasonable suspicion" to believe that the item is within the ownership, possession, or control of the probationer. *Davis*, 932 F.2d at 758–60. In doing so, we stated broadly that "[t]he permissible bounds of a probation search are governed by a reasonable suspicion standard." *Id.* at 758.

■ We need not resolve the apparent tension between *Harper*'s probable cause standard and the "reasonableness" standard enunciated in *Dally* and, more recently, *Davis*. We conclude that Demmel and police had probable cause to believe that Watts was living at the Wheatland Way address. In weekly visits to the Florinda Way house, Demmel had located Watts there only once in fourteen months. On that one occasion, Demmel looked around the house and concluded that what was supposed to be Watts's bedroom lacked the usual signs of residency, such as clothing and personal belongings.

Demmel's suspicions grew when he learned that a confidential reliable informant, who had provided information to Cooper more than a dozen times and whose tips had resulted in multiple convictions, had informed Cooper that Watts was living with Sonja Lee somewhere other than on Florinda Way. Police surveillance verified both the details and the substance of the informant's tip. According to the informant, Watts drove a Ford Taurus; in the first surveillance of Watts, Cooper learned that, contrary to what Watts had told his probation officer, Watts was driving and was the registered owner of a Ford Taurus. In the subsequent surveillance, police observed Watts enter a house whose utilities were verified as registered to Sonja Lee and in whose driveway was a car registered to Sonja Lee. Finally, officers saw Watts go to his mother's home on Florinda Way, knock on the door, then leave when no one responded, strongly suggesting

that Watts did not live there. These pieces of information, considered together, were sufficient to give Demmel and the police probable cause to believe that Watts lived at the Wheatland Way address.[1]

## III. SENTENCING ISSUES

■■■ Watts appeals his sentence, arguing among other things that the district court erred in determining the quantity of drugs involved in the offense and by enhancing his sentence for possessing a weapon. We uphold the district court's factual finding regarding the quantity of drugs involved in the offense unless it is clearly erroneous. *United States v. Upshaw*, 918 F.2d 789, 791 (9th Cir.1990), *cert. denied*, 499 U.S. 930, 111 S.Ct. 1335, 113 L.Ed.2d 266 (1992). We review *de novo* the district court's interpretation of the Sentencing Guidelines. *United States v. Blaize*, 959 F.2d 850, 851 (9th Cir.), *cert. denied*, 504 U.S. 978, 112 S.Ct. 2954, 119 L.Ed.2d 576 (1992).

### A

Watts argues that the district court erred in determining that his offense involved more than 500 grams of crack. Rivera testified at trial that the crack seized from Watts's home weighed 559 grams when it was seized. A few weeks later, the drugs weighed 550 grams. However, by the time of trial, the drugs' weight had dropped below 500 grams.

■■■ The district court did not clearly err in determining that the offense of conviction involved more than 500 grams of crack. The drugs were weighed twice before trial, and each time they weighed significantly more than 500 grams. Although the weight of the drugs fell below 500 grams by the time of trial, expert testimony at trial established that the weight loss could be due to water loss. The government's chemist testified that the moisture in the crack could evaporate and escape as a vapor through small pores in the plastic bags which stored the crack. In light of Watts's failure to submit evidence contradicting this testimony, the district court's acceptance of the government's theory was not clearly erroneous. *See United States v. Thomas*, 11 F.3d 620, 631 (6th Cir.1993) (upholding district court's determination that offense involved more than fifty grams of crack because, although the weight of the crack dropped below fifty grams by the time of trial, expert testified that weight loss was attributable to evaporation and the use of small amounts of crack for testing), *cert. denied*, —— U.S. ——, 114 S.Ct. 1570, 128 L.Ed.2d 214 (1994).

### B

The district court enhanced Watts's base offense level by two levels under U.S.S.G. § 2D1.1(b)(1), which applies if "a dangerous weapon (including a firearm) was possessed" during the offense of conviction. Watts argues that *United States v. Brady*, 928 F.2d 844 (9th Cir.1991), precludes this adjustment because the jury acquitted him of violating section 924(c). We agree.

■■■ The general rule is that "conduct other than that of which a defendant was convicted may be considered in calculating the offense level ... if it is part of the same course of conduct as the crime of conviction." *United States v. Piper*, 918 F.2d 839, 840 (9th Cir.1990). However, a district court sentencing a criminal defendant for the offense of conviction cannot reconsider facts that the jury necessarily rejected by its acquittal of the defendant on another count. *Brady*, 928 F.2d at 851.

In *Brady*, the defendant had been convicted of voluntary manslaughter and assault with a dangerous weapon, but was acquitted of first degree murder and assault with intent to commit murder. Despite the jury's not guilty verdict, the district court at sentencing departed upward from the applicable

---

1. Watts argues that his ownership of a key and garage door opener corresponding to the Wheatland Way house cannot be considered in determining whether Demmel and police had adequate reason to believe that he lived there. He argues that the police determined that the key and the garage door opener corresponded to the house only by using them, which was itself an invasion of privacy that must be justified by probable cause. We need not reach this issue because, even without this information, Demmel and police had probable cause to believe that Watts lived at Wheatland Way.

guideline range because it determined that the defendant had the "intent to inflict serious injury or to kill the victims." We held that the jury's acquittal on the other, more serious counts was binding at sentencing because "[w]e would pervert our system of justice if we allowed a defendant to suffer punishment for a criminal charge for which he or she was acquitted." *Id.* at 851.

We reaffirmed the *Brady* rule in *United States v. Pinkney,* 15 F.3d 825 (9th Cir.1994). In *Pinkney,* the defendant was convicted of conspiring to commit a robbery, but was acquitted of armed robbery. We held that the jury's not guilty verdict on the armed robbery charge prevented the district court from applying a sentencing enhancement for brandishing a firearm during a robbery. *Id.* at 828–29.

■■■■ The government argues that the district court could apply a sentencing enhancement under U.S.S.G. § 2D1.1(b)(1) without considering facts "necessarily rejected" by the jury's acquittal on the section 924(c) charge, because the sentencing enhancement contains fewer elements than the section 924(c) statutory offense. Section 924(c) provides a mandatory five-year sentence for any person who "during and in relation to any crime of violence or drug trafficking crime … uses or carries a firearm." 18 U.S.C. § 924(c). A firearm is used "in relation to" an offense if it facilitated or played a role in the crime. *United States v. Winslow,* 962 F.2d 845, 850 (9th Cir.1992). The mere presence of a firearm during a drug trafficking offense is not sufficient to support a violation of section 924(c). *United States v. Phelps,* 877 F.2d 28, 30 (9th Cir. 1989).

The government emphasizes that, in contrast to section 924(c), section 2D1.1(b)(1)'s sentencing enhancement is appropriate if the defendant possessed a weapon during the commission of the offense; the government need not prove that the firearm was used in relation to or facilitated the offense. *See*

*United States v. Restrepo,* 884 F.2d 1294, 1296 (9th Cir.1989) (possession of a weapon during the offense of conviction is sufficient to support application of an enhancement under U.S.S.G. § 2D1.1(b)(1)). Therefore, the government argues, the district court's determination that Watts possessed a firearm is not a reconsideration of facts rejected by the jury, because the jury could have acquitted Watts on the section 924(c) charge because it believed that Watts possessed a firearm during the offense but that the firearm was not connected to the offense.

Although the government's argument has some surface appeal, it does not withstand closer scrutiny. The connection of a firearm to the offense of conviction, although not an *element* of the weapon enhancement under the Guidelines, is nonetheless relevant. The commentary to U.S.S.G. § 2D1.1(b)(1) provides an exception to the enhancement if the defendant can show that "it is clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1, comment. (n. 3); *see also Restrepo,* 884 F.2d at 1296.

Thus, the connection between the firearm and the predicate offense is relevant under both the sentencing enhancement and section 924(c); the only difference between U.S.S.G. § 2D1.1(b)(1) and section 924(c) is the assignment and standard of the burden of proof regarding this connection.[2] We held in *Brady* that a sentencing judge may not, "under *any* standard of proof," rely on facts of which the defendant was acquitted. *Brady,* 928 F.2d at 851 & n. 12, (emphasis added); *accord Pinkney,* 15 F.3d at 829 n. 3. The district court's comments at sentencing make clear that it violated *Brady:*

> I find that there is a connection between the possession of the guns and the offense.
>
> . . . . .
>
> In that regard, although the jury did not find beyond a reasonable doubt that all of the elements, including facilitation of the commission of the offense, were proven, I find by the preponderance of the evidence

**2.** The language of section 924(c)(1) requires that a firearm be used "in relation to" a drug trafficking crime, and the exception to the firearm enhancement applies if it is clearly improbable that the firearm was "connected with the offense."

However, this circuit has rejected any distinction between the phrases "in connection with" and "in relation to." *United States v. Routon,* 25 F.3d 815, 818 (9th Cir.1994).

that the only logical explanation for the guns is that they emboldened Mr. Watts in his possession of the drugs and in his drug dealings.

 By applying a two-level enhancement for possession of a weapon under U.S.S.G. § 2D1.1(b)(1), despite the jury's not guilty verdict on the section 924(c) charge, the district court disregarded *Brady*.[3] We vacate Watts's sentence and remand for re-sentencing.[4] *See United States v. Nash*, 64 F.3d 504 (9th Cir.1995); *United States v. Still*, 850 F.2d 607, 610 (9th Cir.1988).

## IV. CONCLUSION

The search of the Wheatland Way address was a lawful probation search. Police had probable cause to believe that Watts resided at the house, and the district court's finding that the search was not a subterfuge for a criminal investigation was not clearly erroneous. We vacate the sentence and remand for resentencing, however, because the application of a two-level upward adjustment for possession of a firearm during the offense violated *Brady* in light of the jury's not guilty verdict on the section 924(c) charge.

AFFIRMED in part, VACATED in part, and REMANDED.

---

3. We recognize that several circuits have held that a defendant's acquittal of a section 924(c) charge does not preclude a sentencing enhancement for possession of a firearm under U.S.S.G. § 2D1.1(b)(1). *See, e.g., United States v. Billops*, 43 F.3d 281, 288 (7th Cir.1994), *cert. denied*, — U.S. —, 115 S.Ct. 1389, 131 L.Ed.2d 241 (1995); *United States v. Romulus*, 949 F.2d 713, 716–17 (4th Cir.1991), *cert. denied*, 503 U.S. 992, 112 S.Ct. 1690, 118 L.Ed.2d 403 (1992); *United States v. Coleman*, 947 F.2d 1424, 1428–29 (10th Cir.1991), *cert. denied*, 503 U.S. 972, 112 S.Ct. 1590, 118 L.Ed.2d 307 (1992); *United States v. Duncan*, 918 F.2d 647, 652 (6th Cir.1990); *United States v. Mocciola*, 891 F.2d 13, 16–17 (1st Cir.1989); *United States v. Juarez–Ortega*, 866 F.2d 747, 749 (5th Cir.1989). However, these circuits are not bound by *Brady*. *See Brady*, 928 F.2d at 850–51 (noting that other circuits permit a sentencing court to make findings of fact that have been implicitly rejected by a jury's acquittal).

4. Watts raises two additional sentencing issues not properly before us in this appeal. He argues that he was entitled to a three-level reduction for acceptance of responsibility, not just the two-level reduction awarded by the district court. He also argues that there is no scientific or medical basis for distinguishing between crack cocaine and cocaine and, therefore, under the rule of lenity the district court should have sentenced him under the less severe guidelines governing cocaine-related offenses. Because Watts did not raise these issues in the district court, and they are not purely matters of law or subject to any other exception, we do not address them here. *See United States v. Carlson*, 900 F.2d 1346, 1349 (9th Cir.1990); *United States v. Rubalcaba*, 811 F.2d 491, 493 (9th Cir.1987).

