96 F.3d 1452
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Ira Vincent SPEARMAN, Defendant-Appellant.
 No. 95-50230.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted July 12, 1996.
Decided Sep. 03, 1996.
 
 1
 Before: FERNANDEZ and TASHIMA, Circuit Judges, and MERHIGE, Senior District Judge.*
 
 
 2
 memorandum**
 
 
 3
 Appellant Ira Vincent Spearman appeals his convictions following a jury trial for possession with intent to distribute cocaine base in violation of 21 U.S.C. § 841(a)(1), using or carrying a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c), and felon in possession of a firearm in violation of 18 U.S.C. § 922(g). Further, Spearman contends that this court should issue a declaratory order to resentence him if and when there is a change in the sentencing laws regarding cocaine base.
 
 
 4
 A. Sufficiency of Evidence to Prove Violations of 18 U.S.C. § 924(c)(1) and 841(a)(1)
 
 
 5
 Spearman asserts that the district court erred in denying his motion for acquittal based on the insufficiency of the evidence to sustain convictions under 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 924(c).
 
 
 6
 a. 18 U.S.C. 924(c)(1)
 
 
 7
 Spearman's conviction for use of a firearm in relation to a drug trafficking crime must be reversed, See United States. v. Bailey, 116 S.Ct. 501 (1995).
 
 
 8
 b. 18 U.S.C. 841(a)(1)
 
 
 9
 To sustain a conviction for possession of cocaine base with intent to distribute it, the government must prove that Spearman (1) knowingly (2) possessed the cocaine base (3) with intent to distribute it. See United States v. Quintero-Barraza, 1351 (9th Cir.1995) (citation omitted).
 
 
 10
 In this case there was evidence that on the day of the search Spearman filled out a form and stated that he was living alone in the house with his wife and children. Spearman stipulated that the room where 4 grams of the crack was found was his bedroom. In this same bedroom, on the dresser and in the nightstand there was evidence that over $8,000 cash was found along with Spearman's wallet and other personal papers and sheets with writing on them appearing to contain an accounting of amounts owed and owing. There was also evidence that a paper was found in the bedroom. Elsewhere in the house there was evidence that additional drugs, a bulletproof vest, an assault-style rifle, a handgun, a cellular phone and a set of triple beam scales were found. When reviewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See United States v. Castillo, 866 F.2d 1071, 1088 (9th Cir.1988) (evidence sufficient to convict when specific evidence showed possession of money and narcotics and not just mere presence).
 
 B. Possession Instruction
 
 11
 Spearman asserts that the district court improperly failed to instruct the jury on his "mere proximity" theory of defense to the possession charge. Spearman asserts that the jury instructions did not properly cover his theory of the case, i.e., that his "mere presence" in the house did not establish that he had possessed the drugs or other evidence.
 
 
 12
 In this case the district judge instructed the jury that:
 
 
 13
 In order to sustain its burden of proof for the crime of possession of a controlled substance with the intent to distribute that substance as charged in Count 1 of the indictment, the Government must prove beyond a reasonable doubt:
 
 
 14
 (1) The Defendant possessed approximately 59.39 grams of the controlled substance described in the indictment,
 
 
 15
 (2) The Defendant knew that this substance was a controlled substance, and
 
 
 16
 (3) The Defendant intended to distribute this controlled substance.
 
 
 17
 A person has possession of something if the person knows of its presence and has physical control of it or has the power and intention to control it. More than one person can be in possession of something if each knows of its presence and has the power and intention to control it.
 
 
 18
 ....
 
 
 19
 The district judge went on to define "knowingly" and "intent to distribute." The district court in this case gave the Ninth Circuit Model Instruction on possession as it appears in the Manual of Model Criminal Jury Instructions for the Ninth Circuit, § 3.16. The commentary to the Model Instruction states that further distinction between actual and constructive possession and sole and joint possession is not necessary. In United States v. Terry, this Court stated that this instruction adequately defined the necessary elements of possession. 911 F.2d 272, 280 (9th Cir.1990). See also United States. v. Perez, 67 F.3d 1371, 1379-1380 (9th Cir.1995), rehearing en banc granted, 77 F.3d 1210 (1996), where this Court rejected an argument very similar to that raised by Spearman.
 
 
 20
 While a defendant is generally entitled to have the judge instruct the jury on his theory of defense, a "defendant is not entitled to any particular form of instruction, nor is he entitled to an instruction that merely duplicates what the jury has already been told," U.S. v. Lopez-Alvarez, 970 F.2d 583, 597 (9th Cir.), cert. denied, 113 S.Ct. 504 (1992). In this case the jury instruction delivered by the district court adequately covered Spearman's theory that he was merely present and proximate to the contraband but that it actually belonged to someone else.
 
 C. Motion to Suppress
 
 21
 Spearman asserts the district court improperly denied his motion to suppress evidence and statements.
 
 
 22
 A probation officer acts as a "stalking horse" if she conducts a probation search on prior request of, and in concert with, law enforcement officers. United States v. Richardson, 849 F.2d 439, 441 (9th Cir.), cert. denied, 488 U.S. 866 (1988); Smith v. Rhay, 419 F.2d 160, 162-63 (9th Cir.1969). Collaboration between a probation officer and police, however, does not necessarily render a probation search unlawful. See United States v. Harper, 928 F.2d 894, 897 (9th Cir.1991) (parole officer was not a stalking horse simply because police helped her locate parolee); Jarrad, 754 F.2d at 1454 (fact that police investigation preceded parole search does not render the search a subterfuge); United States v. Gordon, 540 F.2d 452, 453 (9th Cir.1976) (finding a lawful probation search even though Narcotics Task Force agents accompanied the probation officer to expedite the search). The appropriate question is whether the probation officer used the probation search to help police evade the Fourth Amendment's usual warrant and probable cause requirements or whether the probation officer enlisted the police to assist her own legitimate objectives. Harper, 928 F.2d at 897. A probation officer is not a "stalking horse" if she initiates the search in the performance of her duties as a probation officer. Butcher, 926 F.2d at 815; Jarrad, 754 F.2d at 1454.
 
 
 23
 The district court found that the search of Spearman's residence was reasonable and was initiated by the probation officer in furtherance of legitimate probationary purposes. Spearman, however, argues that the task force of which Deputy Kopp was a member was driven by a goal of investigating probationers and parolees involved in new criminal activity. He argues that the goal of Operation Disarm was to federally prosecute state probationers. He claims that the task force was "nothing more than an organized and deliberate decision by police and probation officers to use probation supervision as a subterfuge to enable them to carry out criminal investigations without being troubled by the Fourteenth Amendment." Furthermore, he argues that even before joining the Task Force, Deputy Kopp's discretion was affected by her work with federal agents, claiming that she failed to contact Spearman about possible violations at the request of the ATF, and delayed confronting him in any way at the request of federal agents. We reject these arguments and find no clear error in the district court's determination.
 
 
 24
 In United States v. Watts, 67 F.3d 790, 794 (9th Cir.1995), Watts was on California probation and his probation officer began to suspect that he may have returned to criminal activity. The probation officer sought assistance from local sheriffs. The sheriffs' investigation revealed that Watts was in fact selling cocaine. A joint investigation between the probation officer and sheriff was discussed, but never materialized. The probation officer, however, was a member of a federally funded multi-agency task force devoted to enforcing crack cocaine laws. The probation officer asked for, and received assistance in investigating and subsequently conducting a search of Watts' residence, where crack cocaine and firearms were found.
 
 
 25
 The Watts court affirmed the district court's finding that the search was a valid probation search, noting that the district court's finding that the probation officer was "calling the shots," and was "motivated by the legitimate objectives of the probation system" was not clearly erroneous. Id. at 794. The Court noted that it was the probation officer who sought the support of the task force members, rather than the task force targeting Watts and then seeking help from the probation officer. The Court explained, "this would be a different case if police officers had targeted a suspect as part of a normal law enforcement investigation and then enlisted the help of a probation officer in order to search the suspect's home without a warrant." Id. at 794-95.
 
 
 26
 In the instant case, we find no evidence of any conspiracy between Deputy Kopp and federal agents. Although Deputy Kopp had previously contacted law enforcement about Spearman before joining the Task Force, those contacts were routine cooperative efforts. In fact, those agents never asked Deputy Kopp to conduct a search and were not involved in the final search of Spearman's residence.
 
 
 27
 As for the Task Force, SA Galvan was the only federal agent on that team. Furthermore, he acted in an advisory role and had never heard of Spearman until Deputy Kopp brought the name to his attention. Deputy Kopp made the final decision to search Spearman's home, and was the one "calling the shots" during the entire investigation. This Court has made it clear that, in an effort to carry out legitimate objectives, probation officers and police may work together to conduct a probation search. See, Watts, 67 F.3d at 793-94; Harper, 928 F.2d at 897; Jarrad, 754 F.2d at 1454.
 
 
 28
 The district court's determination that the search of Spearman's residence was "reasonable, conducted by the probation officer, at the initiation of the probation officer and not of the law enforcement agency," is not clearly erroneous.
 
 
 29
 D. Spearman's Motion for Substitution of Counsel
 
 
 30
 Spearman asserts that the district court abused its discretion in denying his motions to substitute counsel.
 
 
 31
 "In reviewing a lower court's denial of substitution, we evaluate three factors: the timeliness of the motion, the adequacy of the lower court's inquiry into the defendant's complaint, and whether the asserted conflict created a total lack of communication such that the defendant was unable to present an adequate defense." U.S. v. Garcia, 924 F.2d 925, 926 (9th Cir.1991).
 
 
 32
 a. Timeliness of the Motion
 
 
 33
 Spearman's first motion to substitute counsel was made on July 19, 1994, approximately six weeks prior to the August 30, 1994 trial date. While this case was apparently a "big" complex case, six weeks prior to trial is not untimely on its face and the district court did not make a finding of untimeliness.
 
 
 34
 b. Adequacy of the Inquiry
 
 
 35
 "A trial court may not summarily refuse to allow the substitution of attorneys, but must conduct 'such necessary inquiry as might ease the defendant's dissatisfaction, distrust, and concern.' " Id. (quoting Hudson v. Rushen, 686 F.2d 826, 829 (9th Cir.1982), cert. denied, 461 U.S. 916 (1983)).
 
 
 36
 In this case the district court, on July 20, 1994, held a hearing on Spearman's first motion the day after it was filed. The district court heard from both Spearman and his counsel regarding the request for new counsel. The district court inquired further about the nature of the conflict between Spearman and the attorney. When the defense counsel replied that he would prefer not to discuss the exact nature of the conflict in front of the government, but said "I can represent to the Court that there are some conflicts on how to proceed in this case," the district court then, correctly, explained that "disagreements on how to proceed in a case" are not grounds to replace an attorney. Defense counsel replied, "Very well, your Honor." Spearman was then allowed to put his grievances on the record. Spearman complained that he had asked defense counsel for information that would help his case and that it had not been forthcoming and that he was not "comfortable" with defense counsel because he had never handled a mandatory life sentence case before. The court addressed Spearman's concerns by reassuring Spearman that this did not mean counsel was not experienced enough and competent to handle the case. The court asked Spearman if there was anything else he wanted to say. Spearman replied, "That's it, your Honor." At the October 20, 1994 hearing on Spearman's second motion, after trial but prior to sentencing, Spearman again raised concerns over his counsel's competency and the district court again assured Spearman that his counsel had done a good job. In early February of 1995 the district court held a hearing on Spearman's third motion--the district court denied the motion for substitute appointed counsel on the same basis as he had in October of 1993.
 
 
 37
 It appears from the record that the district court, on three separate occasions, conducted an inquiry sufficient to ascertain the true nature of the dispute between Spearman and his attorney. This is all that is required.
 
 
 38
 c. Extent of the Conflict
 
 
 39
 "An indigent defendant is entitled to appointed counsel, but not necessarily to appointed counsel of his choice." United States v. Torres-Rodriguez, 930 F.2d 1375, 1380 n. 2 (9th Cir.1991). "[T]here is no sixth amendment right to a 'meaningful relationship' between an accused and counsel." United States v. Schaff, 948 F.2d 501, 505 (9th Cir.1991) (quoting Morris v. Slappy, 461 U.S. 1, 14 (1983)). To establish that the district court abused its discretion by denying the motion for substitution, Spearman must show a total lack of communication with counsel that prevented an adequate defense. Schaff, 948 F.2d at 505.
 
 
 40
 As noted above, Spearman was, essentially, not in conflict with his lawyer but was unhappy with the lawyer's skills. The record indicates that Spearman conferred with his attorney at the substitution hearing itself and was suggesting strategy choices to his attorney. This suggests that Spearman was actively participating in his defense and that there was not a total lack of communication between him and his attorney.
 
 
 41
 In sum, upon evaluation of the three factors, we conclude that the district court did not abuse its discretion in denying Spearman's motions to substitute counsel.
 
 E. Vindictive Prosecution
 
 42
 Spearman argues that the district judge should have dismissed the information setting forth Spearman's four prior felony narcotics convictions filed by the government pursuant to 21 U.S.C. § 851 on the basis that the enhancement priors were filed vindictively.
 
 
 43
 In U.S. v. Noushfar, this Court elaborated on the analysis appropriate when a defendant raises a claim of vindictiveness:
 
 
 44
 A prosecutor violates due process when he brings additional charges solely to punish the defendant for exercising a constitutional or statutory right. To establish a claim of vindictiveness the defendant must make an initial showing that charges of increased severity were filed because the accused exercised a statutory, procedural, or constitutional right in circumstances that give rise to an appearance of vindictiveness. The prosecution then has the burden to show a non-vindictive reason for bringing the charges.
 
 
 45
 The [defendants] allege first that the government brought the additional charges to punish them for refusing to accept a plea bargain. During plea negotiations, however, prosecutors may threaten additional charges and may carry through on this threat. This action alone does not violate a defendant's due process rights, nor does it create a presumption of vindictiveness.
 
 
 46
 78 F.3d 1442, 1446 (9th Cir.1996).
 
 
 47
 In this case, prior to trial the United States filed an information setting forth Spearman's four prior felony narcotics convictions pursuant to 21 U.S.C. § 851. Prior to filing the information, the government extended Spearman a plea offer in which it agreed not to file the enhancements in exchange for a plea of guilty on the drug trafficking charge. The government offered to let Spearman pursue pre-trial motions and plead conditionally while still taking advantage of this offer. Spearman rejected the government's plea offer and elected to proceed to trial. Before trial, Spearman filed a motion grounded on alleged vindictive prosecution charging that the government had filed the information only to "coerce a plea." Spearman essentially argued that it was vindictive to file the enhancement because the resulting sentence was too long and therefore unjust. The district court denied the motion finding that the government had engaged in permissible plea bargaining.
 
 
 48
 In light of Noushfar we conclude that it did not violate due process or raise a presumption of vindictiveness for the United States to have carried out its threat to file an information setting forth Spearman's prior convictions, resulting in a mandatory sentence of life upon conviction, after plea negotiations were not successful.
 
 F. Declaration on Resentencing
 
 49
 Spearman has asked us to issue a declaration that he is entitled to be resentenced should the crack sentencing laws be revised in the future. We decline to render such an advisory opinion.
 
 
 50
 We AFFIRM Spearman's convictions for possession with intent to distribute cocaine base in violation of 21 U.S.C. § 841(a)(1) and felon in possession of a firearm in violation of 18 U.S.C. § 922(g). We REVERSE Spearman's conviction for using or carrying a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c) and REMAND for resentencing.
 
 
 
 *
 The Honorable Robert R. Merhige, Jr., Senior United States District Judge for the Eastern District of Virginia, sitting by designation
 
 
 **
 This disposition is not suitable for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3