UNITED STATES of America, Plaintiff,

v.

Will E. SCOTT, Sr., Defendant.

No. CR. 96–30076–01.

United States District Court,
D. South Dakota,
Central Division.

Oct. 22, 1996.

Thomas J. Wright, Assistant United States Attorney, Pierre, SD, for Plaintiff.

Patricia A. Carlson, Carlson Law Office, Pierre, SD, for Defendant.

## MEMORANDUM OPINION AND ORDER GRANTING MOTION TO SUPPRESS

MORENO, United States Magistrate Judge.

### BACKGROUND

Defendant, Will E. Scott, Sr., was arrested on May 20, 1996 and charged by information with possession of a controlled substance (marijuana) in violation of 21 U.S.C. § 844 (a misdemeanor). Subsequently, counsel was appointed and, following a preliminary hearing, defendant was held to answer the controlled substance charge. After executing a consent to have this Court preside over the entirety of the matter in accordance with Fed.R.Crim.P. 58, a hearing was held on defendant's Motion to Dismiss, Docket No. 11. The Court denied defendant's Motion in a bench ruling made on September 18, 1996 and defendant thereafter filed a Motion to Suppress, Docket No. 31. In his suppression Motion, defendant seeks to exclude at trial "all oral, observable, detectable and tangible evidence" obtained by agents or employees of the federal government or the Rosebud Sioux Tribe as a result of his warrantless arrest on May 20, 1996 at his home in Mission, South Dakota. Plaintiff filed a written response to defendant's Motion and a hearing was later held on October 16, 1996, at which six witnesses testified and one exhibit was received into evidence.

### FACTS

On January 26, 1996, defendant was found guilty in District Court, in and for Cherry County, Nebraska of the felony offense of unlawful possession of a controlled substance. He was sentenced on February 23, 1996 to a three-year term of probation and ordered to comply with various terms and conditions including the following:

10. Not have in your possession any firearms or illegal weapons.

11. Submit, from time to time, to any reasonable search and seizures of premises, person or vehicle, with or without probable cause, by or upon request of the probation officer or any law enforcement officer.

Defendant, by and through his signature, acknowledged receiving a copy of the probation order and agreed to abide by and comply with the terms and conditions of the Order.

On April 12, 1996, Dennis Quigley, a Criminal Investigator for the Rosebud Police Department, contacted Mark DeMers, a Nebraska state probation officer, after being told by an informant that defendant was on probation in the State of Nebraska. Quigley advised DeMers that he (Quigley) had information that defendant was dealing drugs and asked DeMers for a copy of the probation order.

Later that same day, Quigley went to defendant's apartment in Mission, knocked at the door, was allowed entry and proceeded to conduct a warrantless search of defendant's person and property pursuant to the probation order. No drugs, however, were found during the course of the search.

Quigley subsequently called and spoke to DeMers on April 15, 1996. He then contacted DeMers again on May 20, 1996 and talked to him, during regular business hours, about defendant. In the meantime, DeMers had filed a probation violation notice against defendant in Nebraska state court after defendant's urine sample tested positive for drugs.

Some time around 9:00 p.m. on May 20, 1996, Quigley and another police officer went to defendant's residence. Quigley had received information from an informant that defendant was possessing and/or selling marijuana. Quigley knocked on the door of the apartment and entered after hearing a voice say, "Come in". Upon entering, Quigley told defendant that he wanted to conduct a search for "drugs" and proceeded to show defendant a copy of his probation order. Quigley pointed something out to defendant in the same order and then began reading paragraph 10 of the same to him out loud. As Quigley started reading, defendant interrupted him,

saying "I know" and agreed to what Quigley had previously shown him in the order. Quigley, nonetheless, insisted that he finish reading paragraph 10 to defendant and did so, but stopped there.[1] Quigley then searched defendant and found three bags of marijuana in defendant's right rear pocket. Thereafter, Quigley and the officer who accompanied him searched the apartment, the persons inside[2] and defendant's vehicle. They found marijuana stems in the vehicle and more marijuana in the trunk of the same.

Following the seizure of the marijuana, Quigley arrested defendant and called DeMers to inform him of what had transpired.[3] Although not clear from the record, defendant was presumably detained by tribal authorities until August 27, 1996 when a probable cause affidavit was sworn out and an information filed charging him federally with possession of marijuana.

### DISCUSSION

■ "Probationers do not receive 'the absolute liberty to which every citizen is entitled, but only ... conditional liberty properly dependent on observance of [probation] restrictions.'" *United States v. Schoenrock*, 868 F.2d 289, 292 (8th Cir.1989) (*quoting Griffin v. Wisconsin*, 483 U.S. 868, 874, 107 S.Ct. 3164, 3168–69, 97 L.Ed.2d 709 (1987)); *see also, United States v. Kills Enemy*, 3 F.3d 1201, 1203 (8th Cir.1993), *cert. denied*, 510 U.S. 1138, 114 S.Ct. 1121, 127 L.Ed.2d 430 (1994). In *Griffin*, the Supreme Court upheld the constitutionality of a warrantless search of a probationer's residence conducted pursuant to a state regulation which authorized such searches on the basis of reasonable suspicion. *Id.* at 872–80, 107 S.Ct. at 3167–72. The Court explained that a state's operation of its probation system presents "special needs" beyond normal law enforcement, such as close supervision of probationers, that may justify departing from the

Fourth Amendment's usual warrant and probable cause requirements. *Id.* at 873–74, 107 S.Ct. at 3168–69. The Court concluded that a state probationary search satisfied the Fourth Amendment's general requirement of reasonableness if it is conducted pursuant to a valid state regulation governing probationers. *Id.* at 880, 107 S.Ct. at 3172. The Court, however, specifically declined to consider the state's argument that "*any* search of a probationer's home by a probation officer is lawful when there are 'reasonable grounds' to believe contraband is present." *Id.* at 880, 107 S.Ct. at 3172.

■ "*Griffin* [thus] stands for the proposition that reasonableness for probationary searches may be established by statute, rather than by warrant." *Schoenrock*, 868 F.2d at 292. A number of federal circuits have held that "reasonableness" can be established by narrowly-tailored restrictions included within a probation agreement. *See e.g., United States v. Wryn*, 952 F.2d 1122, 1124 (9th Cir.1991); *United States v. Giannetta*, 909 F.2d 571, 575 (1st Cir.1990); *Schoenrock*, 868 F.2d at 292–93.

■ There can be no question that the warrantless search of defendant's person, his apartment and vehicle was authorized by Nebraska state law and/or the probation order defendant agreed to follow. *Rowe v. Carson*, 911 F.Supp. 389, 392–93 (D.Neb.1996). Nor is there much doubt that Quigley had the requisite "reasonable suspicion" to conduct a probation search in light of the information he had received from his informant that, among other things, defendant was possessing and/or selling drugs, and his knowledge that defendant had tested positive for drugs on a drug screening test and had a violation notice pending against him in Nebraska state court. *Griffin*, 483 U.S. at 879–80, 107 S.Ct. at 3171–72; *United States v. Lewis*, 71 F.3d

1. Quigley never did read paragraph 11 to defendant.

2. At the time Quigley entered the apartment, defendant's girlfriend, Janelle Roubek, her son Nate (a 3 or 4 year-old child who defendant is the father of), defendant's son and daughter, Shawn and Sheila Scott, (both of whom are adults) and three other persons, namely, Rich

Broken Leg, Ricky Scott and Charlie Deville were present. Roubek, her son and defendant's son and daughter had been living with defendant for some time prior to the search.

3. One month later, on June 20, 1996, Quigley called DeMers a fifth time to request a copy of defendant's violation notice.

358, 362 (10th Cir.1995); *United States v. Coleman*, 22 F.3d 126, 130 & n. 3 (7th Cir. 1994). The search, therefore, on its face would appear to pass constitutional muster under the Fourth Amendment. Yet, unlike the situation in *Griffin*, where the search was conducted by probation officers, the search here was performed by police officers and, as such, requires further scrutiny.

Courts have uniformly held that a probation search may not be used as a "subterfuge for a criminal investigation" and that a probation officer must not act as a "stalking horse" for the police. *United States v. McCarty*, 82 F.3d 943, 947 (10th Cir.), *cert. denied*, —— U.S. ——, 117 S.Ct. 257, 136 L.Ed.2d 183 (1996); *United States v. Watts*, 67 F.3d 790, 794 (9th Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 1369, 134 L.Ed.2d 534 (1996); *United States v. Martin*, 25 F.3d 293, 296 (6th Cir.1994); *Shea v. Smith*, 966 F.2d 127, 132–33 (3d Cir.1992); *Giannetta*, 909 F.2d at 581 (*citing United States v. Cardona*, 903 F.2d 60, 65–66 (1st Cir.1990), *cert. denied*, 498 U.S. 1049, 111 S.Ct. 758, 112 L.Ed.2d 778 (1991)); *see also*, *United States v. Jarrad*, 754 F.2d 1451, 1454 (9th Cir.), *cert. denied*, 474 U.S. 830, 106 S.Ct. 96, 88 L.Ed.2d 78 (1985).[4]

■ A probation officer acts as a stalking horse if he conducts a probation search based on the prior request of and in concert with law enforcement officers. *Watts*, 67 F.3d at 794; *United States v. Richardson*, 849 F.2d 439, 441 (9th Cir.), *cert. denied*, 488 U.S. 866, 109 S.Ct. 171, 102 L.Ed.2d 141 (1988); *Smith v. Rhay*, 419 F.2d 160, 162–63 (9th Cir.1969). Collaboration between a probation officer and police, however, does not in and of itself render a probation search unlawful. *Watts*, 67 F.3d at 794; *see also*, *United States v. Harper*, 928 F.2d 894, 897

(9th Cir.1991) (parole officer was not a stalking horse simply because police helped him locate parolee); *Jarrad*, 754 F.2d at 1454 (the fact that police investigation preceded parole search did not render the search a subterfuge). The appropriate inquiry is whether the probation officer used the probation search to help police evade the Fourth Amendment's usual warrant and probable cause requirements or whether the probation officer enlisted the police to assist his/her own legitimate objectives. *Watts*, 67 F.3d at 794; *Harper*, 928 F.2d at 897. A probation officer does not act as a stalking horse if he initiates the search in the performance of his duties as a probation officer. *Watts*, 67 F.3d at 794; *United States v. Butcher*, 926 F.2d 811, 815 (9th Cir.), *cert. denied*, 500 U.S. 959, 111 S.Ct. 2273, 114 L.Ed.2d 724 (1991); *Jarrad*, 754 F.2d at 1454.

In the instant case, the evidence indicates that the probation search was a mere subterfuge for an ongoing criminal investigation of defendant and that DeMers acted as a stalking horse for police.

■ *See United States v. Merchant*, 760 F.2d 963, 969 (9th Cir.1985), *cert. granted*, 478 U.S. 1003, 106 S.Ct. 3293, 92 L.Ed.2d 708 (1986), *cert. dismissed*, 480 U.S. 615, 107 S.Ct. 1596, 94 L.Ed.2d 614 (1987);[5] *see also*, *United States v. Davis*, 932 F.2d 752, 758, n. 4 (9th Cir.1991). Significantly, it was Quigley who first contacted DeMers, advised him of defendant's alleged drug involvement and asked for a copy of defendant's probation order. *Compare Butcher*, 926 F.2d at 815; *Jarrad*, 754 F.2d at 1454. Moreover, it is clear that the Rosebud Police Department had an ongoing investigation into defendant's drug dealings at the time and that the police were trying their level best to catch him with drugs in his possession.[6] *See Merchant*, 760 F.2d at 969; *compare United States v. Gavis*, No. Crim.A. 96–144, 1996 WL 296531 at *1

---

4. This Court has been unable to find any Eighth Circuit cases directly relating to the subterfuge/stalking horse issue. Because the issue appears to be one of first impression among reported cases within this Circuit, the Court has had to look to courts in other circuits for guidance.

5. The writ of certiorari that was granted by the Supreme Court on June 30, 1986 was later dis-

missed by the Court on March 24, 1987 as improvidently granted.

6. The fact that police searched defendant twice within a five-week time period and came to his apartment looking for him a third time (just before the April 12, 1996 search) makes it evident that police were eager to nab him.

(E.D.Pa. June 4, 1996) (police present only to provide security, not as a part of police investigation). It is likewise clear that the search was initiated at the behest of Quigley, not DeMers, and that police, rather than probation objectives, were the real motivation behind the search. *Compare United States v. Vought,* 69 F.3d 1498, 1501 (9th Cir.1995); *United States v. Hill,* 967 F.2d 902, 911 (3d Cir.1992); *Shea,* 966 F.2d at 133; *Butcher,* 926 F.2d at 815; *Jarrad,* 754 F.2d at 1454; *Rhay,* 419 F.2d at 162–63.[7] Quigley had been to defendant's apartment on at least one occasion *before* he ever contacted DeMers and then went to the apartment again on April 12, 1996 and conducted a search within hours after calling DeMers and obtaining a copy of the probation order. Although DeMers had prior knowledge of and acquiesced to the May 20, 1996 search, the evidence reveals that Quigley "was calling the shots." Indeed, Quigley was the one (1) who made the decision to search and ultimately arrest defendant; (2) who was in charge of the search; and (3) who decided what to seize. *Compare Watts,* 67 F.3d at 794; *Vought,* 69 F.3d at 1501; *Hill,* 967 F.2d at 911; *Giannetta,* 909 F.2d at 581. While it is true that DeMers, in early May, 1996, filed a probation violation notice against defendant in Nebraska state court, there is nothing in the record that conclusively shows that Quigley's search was conducted as part of the violation matter. Instead, Quigley's call to DeMers *on June 20, 1996,* requesting a copy of the violation notice, suggests just the opposite is true and bolsters this Court's view that the search was conducted primarily for law enforcement purposes.

■ The facts here paint a picture of subterfuge and overreaching on the part of police. They establish that police had targeted defendant, as part of a drug investigation, and then enlisted the help of DeMers in order to search defendant's apartment without a warrant. This Court joins other courts, *see Merchant,* 760 F.2d at 969, in condemning the use of a search condition,

imposed on a probationer such as defendant, as a broad investigatory tool for law enforcement. Probation searches must be used for rehabilitative and security purposes and not as a mechanism for solving crimes and circumventing the proscriptions of the Fourth Amendment.

Believing that the May 20, 1996 probation search was illegal, because it was nonconsensual and not authorized by any exception to the warrant requirement, *see Griffin,* 483 U.S. at 873, 107 S.Ct. at 3168; *Rhay,* 419 F.2d at 163, and that as such, the evidence obtained therefrom should be excluded, *see Merchant,* 760 F.2d at 969; *see also, United States v. Leon,* 468 U.S. 897, 919, 104 S.Ct. 3405, 3418–19, 82 L.Ed.2d 677 (1984), it is accordingly,

ORDERED that defendant's Motion to Suppress, Docket No. 31, shall be and is GRANTED.

---

7. *Lewis, Vought, Coleman, Hill, Harper, Butcher, Cardona, Jarrad,* and *Rhay, ante,* all of which involve parole searches, are nonetheless controlling here because there is "no constitutional difference between parole and probation for purposes of the Fourth Amendment." *Hill,* 967 F.2d at 909 (*quoting Harper,* 928 F.2d at 896, n. 1); *Davis,* 932 F.2d at 758; *c.f. Griffin,* 483 U.S. at 874, 107 S.Ct. at 3168–69 (both probationers and parolees have diminished liberty rights).