[Cite as *State v. Muhlenkamp*, 2017-Ohio-8269.]

IN THE COURT OF APPEALS OF OHIO
THIRD APPELLATE DISTRICT
MERCER COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLANT,                  CASE NO. 10-17-05

      v.

JERROD W. MUHLENKAMP,           O P I N I O N

      DEFENDANT-APPELLEE.

Appeal from Mercer County Common Pleas Court
Trial Court No. 16-CRM-086

Judgment Reversed and Cause Remanded

Date of Decision:  October 23, 2017

APPEARANCES:

    *Matthew K. Fox and Joshua A. Muhlenkamp* for Appellant

    *James A. Tesno* for Appellee

**ZIMMERMAN, J.**

{¶1} Appellant, the State of Ohio ("the State"), appeals the judgment of the Mercer County Common Pleas Court that granted Appellee, Jerrod W. Muhlenkamp's ("Muhlenkamp"), motion to suppress. For the reasons that follow, we reverse the judgment of the trial court.

*Facts and Procedural History*

{¶2} The facts relevant to this appeal involve the search of Muhlenkamp's residence. Muhlenkamp had been under probation supervision of the Mercer County Adult Probation Department since 2010. His probation officer was Dane Gross ("Gross"). As a part of his supervision, the trial court set out community control sanctions, which Muhlenkamp signed and agreed to on December 30, 2013. (Ex. 1). Muhlenkamp's community control sanctions required him "to submit to searches, without a warrant, of his person, vehicle, or place of residence by a probation officer". *Id.* The community control sanctions also included the requirement for Muhlenkamp to submit to random drug screens. *Id.*

{¶3} Pursuant to the terms of his probation, Muhlenkamp submitted to an eye scan, a preliminary test for illicit drug usage, at the Mercer County Sheriff's Office on July 5, 2016. Muhlenkamp failed the scan and was directed, by Gross, to submit to a urine sample for drugs. Muhlenkamp refused to take the test which resulted in the determination that he failed the urine test and was in violation of his

community control sanctions. Further, on that same date, Gross received information (from another probation officer) that Muhlenkamp was actively using methamphetamines and was potentially manufacturing methamphetamines at his residence. Lastly, and again on that date, Gross received a phone call from Sgt. Link, of the Mercer County Sheriff's Department, expressing concern of Muhlenkamp's recent paranoid behavior and suspected drug usage.

**{¶4}** With this information, Gross planned to arrest Muhlenkamp at his residence and search it for drugs and for evidence of a "meth lab". To accomplish his search for a "meth lab", Gross sought the assistance of the Grand Lake Task Force, for safety measures, due to the potential that "dangerous chemicals" may be involved. (Tr. 12-13).

**{¶5}** On July 7, 2016, Gross, along with members of the Grand Lake Task Force, arrived at Muhlenkamp's residence. At the direction of Gross, the Task Force officers commenced a search of the outbuildings while he (Gross) knocked on the front door of the residence in order to find Muhlenkamp. When no one answered the door of the residence, Gross joined the Task Force officers in the search of the outbuildings. Ultimately, the search of the outbuildings yielded no evidence of a "meth lab", so the group concluded its search and decided to leave the residence. However, when leaving the premises, Gross observed Muhlenkamp seated on the back patio of the residence. Gross, accompanied by the Task Force

officers, approached Muhlenkamp on the patio. When speaking to Gross and the officers, Muhlenkamp became agitated and began yelling at the Task Force Officers. (Tr. 19). Gross suspected that Muhlenkamp was under the influence of "meth" and asked Muhlenkamp to submit to a drug screen. Muhlenkamp agreed but told Gross that he would test "dirty". (Tr. 19). Gross then made the decision to arrest Muhlenkamp for violating his probation. However, since Muhlenkamp was a double leg amputee and was not wearing his prosthetic legs at the time, Gross assisted him into the residence to retrieve his prosthetics prior to formally arresting him. Once inside the residence, Muhlenkamp advised Gross that he had a digital scale in his bedroom closet, which Gross found. (Tr. 20).

{¶6} Gross then arrested Muhlenkamp. After arresting and securing Muhlenkamp into the custody of another law enforcement officer for transportation to the county jail, Gross and Sgt. Crum, a member of the Grand Lake Task Force, remained in Muhlenkamp's residence. It was Gross's decision to remain in the residence to search Muhlenkamp's bedroom after Muhlenkamp was arrested and removed. Thereafter, and at Gross's direction, Sgt. Crum searched Muhlenkamp's dresser wherein he found "rolling" papers and some plastic baggies stuffed into a Marlboro cigarette pack. (Tr. 42). When he opened the baggies, Sgt. Crum recognized its contents to be crystal methamphetamine. (Tr. 42). At that time, the search concluded so the Task Force could secure a warrant to proceed further.

{¶7} On July 22, 2016, Muhlenkamp was indicted on one count of Aggravated Possession of Drugs, in violation of ORC 2925.11(A), 2925.11(C)(1)(a), a felony of the fifth degree. (Doc. 5). On July 27, 2016, Muhlenkamp entered a plea of not guilty. (Doc. 16). On March 14, 2017, Muhlenkamp filed a Motion to Suppress the evidence found in his home claiming the search of his residence was "beyond the scope of what would be referred to as a 'probationers search' ". (Doc. 68). On April 12, 2017 the trial court granted Muhlenkamp's Motion to Suppress. (Doc. 79). It is from this decision that the State appeals raising the following assignment of error.

## ASSIGNMENT OF ERROR

**THE TRIAL COURT ERRED WHEN IT SUPPRESSED EVIDENCE FOUND IN THE DEFENDANT'S RESIDENCE DURING A SEARCH CONDUCTED BY THE DEFENDANT'S PROBATIONS [SIC] OFFICER AND LAW ENFORCEMENT OFFICERS WHO WERE PRESENT TO ASSIST THE PROBATION OFFICER IN CONDUCTING A SEARCH.**

{¶8} Under its sole assignment of error, the State contends that the trial court improperly granted Muhlenkamp's motion to suppress, arguing that law enforcement officers may assist probation officers in warrantless searches of probationers that are under community control sanctions.

*Standard of Review*

{¶9} Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶8. When

considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. *State v. Schmidt*, 9th Dist. Lorain No. 13CA010499, 2015-Ohio-146, citing *Burnside*, *Id.* Consequently, an appellate court must accept the trial court's findings of facts if they are supported by competent, credible evidence. *Burnside* at ¶8, citing *State v. Fanning*, 1 Ohio St.3d 19. Regarding the trial court's conclusion of law, however, we must independently determine, without deference to the conclusion of the trial court, whether the factual findings satisfy the legal standard as a matter of law, because "the application of the law to the trial court's findings of fact is subject to a *de novo* standard of review". *State v. Persinger*, 3d Dist. Marion No. 9-15-10, ¶9, citing *State v. Norman*, 136 Ohio App.3d 46, 52.

*Probation and Parole Officer Searches*

{¶10} It is well established that consent to a warrantless search will not be held invalid nor the resulting search unreasonable when one with authority over the premises voluntarily permits the search. *State v. Morris*, 48 Ohio App.3d 137, paragraph two of the syllabus. Moreover, the Fourth Amendment protection against unreasonable searches and seizures is less severe, however, when applied to probationers or parolees if a warrantless search is conducted pursuant to a valid state regulation. *Griffin v. Wisconsin*, 483 U.S. 868, 107 S.Ct. 3164 (1987).

{¶11} In *Griffin*, the United States Supreme Court recognized that a State's operation of a probation system, "presents 'special needs' beyond normal law enforcement that may justify departures from the usual warrant and probable-cause requirements". *Id.* Furthermore, "a warrantless search performed pursuant to a condition of parole requiring a parolee to submit to random searches of his or her person, motor vehicle, or place of residence by a parole officer at any time is constitutional." *State v. McCain*, 154 Ohio App.3d 380, 2003-Ohio-4890 (2003), citing *State v. Benton*, 82 Ohio St.3d 316, 321. "There is no material difference between probationers and parolees with regard to constitutional guarantees." *McCain*, citing *State v. McKinney*, 112 Ohio Misc.2d 30, 34 (2000), citing *State v. Roberts*, 32 Ohio St.3d 225, 229 (1987). "Therefore, the rationale supporting the *Benton* holding also applies to persons subject to community-control sanctions, and warrantless searches conducted pursuant to a condition of community control are constitutional". *McCain*, citing *McKinney*, *Id.*

{¶12} Moreover, conditions to probation or parole are undoubtedly related to the "interests of doing justice, rehabilitating the offender, and insuring his good behavior". *State v. Jones*, 49 Ohio St.3d 51, 53 (1990). Furthermore, "a consensual search pursuant to such conditions and regulations has been upheld as being an exemption to the warrant requirement". *State v. Braxton*, 102 Ohio App.3d 28 (1995).

*Analysis*

**{¶13}** In our review of the record we disagree with the trial court's determination that the search of Muhlenkamp's residence was a pretextual search. Instead, we find that Gross was the person who contacted the Task Force and requested assistance to search for a possible "meth lab" at Muhlenkamp's residence. Gross's choice (to seek assistance from the Task Force to search for a "meth lab") was a prudent one in light of the potentially dangerous chemicals associated with a "meth lab".[1]

**{¶14}** If law enforcement rather than probation supervision was the primary purpose of the search of Muhlenkamp's dresser, the search in this case would be improper. However, "collaboration between a probation officer and police does not in itself render a probation search unlawful". *State v. Cowans*, 87 Ohio St.3d 68, quoting *State v. Watts*, 67 F.3d 790, at 794.

**{¶15}** In this case, Gross and the Task Force members had completed their search for a meth lab and were in the process of leaving Muhlenkamp's property when Gross spotted him on the patio. It was Gross's decision to approach Muhlenkamp, not the Task Force officers. And when Muhlenkamp admitted to being "dirty", Gross started the process of arresting Muhlenkamp for a probation

---

[1] Please see R.C. 2933.33 wherein the state legislature has determined that the illegal manufacturing of methamphetamines involves the potential for causing injury to the public and thereby presents a matter of exigent circumstances relative to a search.

violation. Since their search for a "meth lab" was contained only to outbuildings and not Muhlenkamp's residence, and had concluded, the Task Force officers were available to assist in the arrest of Muhlenkamp. Once the arrest was completed, Gross searched Muhlenkamp's bedroom, with the assistance of Sgt. Crum, for evidence relative to Muhlenkamp's probation violation. The absence of Muhlenkamp in the residence during the search is immaterial since Gross was authorized to search the residence pursuant to the terms of Muhlenkamp's community control.

{¶16} Moreover, the facts presented *do not* constitute a pretextual or a "stalking horse" search since Gross's request for assistance of the Task Force was a reasonable one (and necessary to locate and secure a "meth lab" that may have been operated by Muhlenkamp) due to the danger presented. More importantly, when no lab was found on the premises, the Task Force did nothing further relative to a search of Muhlenkamp or his residence *on its own*. And *only* after Gross requested the assistance of Sgt. Crum to search Muhlenkamp's dresser, were drugs located.

{¶17} Thus, because Gross was authorized to search Muhlenkamp's residence as a condition of his community control and because Sgt. Crum searched the dresser at Gross's behest, the search herein was not pretextual, and was valid.

{¶18} Accordingly, the trial court erred in sustaining the motion to suppress.

{¶19} Having found error prejudicial to the appellant herein, in the particulars assigned and argued, we reverse the judgment of the Mercer County Common Pleas Court and remand this matter for further proceedings consistent with this opinion.

*Judgment Reversed and*
*Cause Remanded*

**PRESTON, P.J. and WILLAMOWSKI, J., concur.**

**/jlr**